**R.E. ABBOTT, et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

**Court No. 81–1–00028.**

United States Court of International Trade.

June 6, 1984.

Bruce M. Frey, Marion, Ind., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on the brief), for defendant.

*On Plaintiffs' Motion for Review of Administrative Determination upon Agency Record*

RE, Chief Judge:

Plaintiffs, on behalf of former employees at the Dana Corporation's Marion, Indiana plant (Marion plant), challenge the Secretary of Labor's denial of certification of eligibility for worker adjustment assistance benefits under the Trade Act of 1974. 19 U.S.C. §§ 2101–2487 (1976 & Supp. V 1981). The Secretary's denial is part of a multiple determination on the petition for certification filed by the Marion plant employees. In his determination, the Secretary certified only the workers "engaged in employment related to the production of journal crosses and bearing races," namely those in Departments 225 and 230. The Secretary did not certify the remaining production workers at the plant and the service workers, who provided ancillary and support services to all of the production departments, because they failed to satisfy the eligibility criteria of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976).

The background of this action is detailed in *Abbott v. Donovan*, 6 C.I.T. ——, 570 F.Supp. 41 (1983), (*Abbott I*), and need not be repeated here. In *Abbott I*, this Court affirmed the Secretary's determination denying certification to the production workers, other than those in Departments 225 and 230. After reviewing the administrative record, the court concluded that the workers in Departments 225 and 230 were the only ones who produced articles adversely affected by increased imports of like or directly competitive articles, as contemplated by section 222(3) of the Act.

As to the service workers, in *Abbott I*, the Secretary found that increased imports of journal crosses and bearing races did not contribute importantly to their separation from employment from the Marion plant. The Secretary noted that his investigation did not establish an "important causal nexus" between increased imports and the separation of the service workers. For an "important causal nexus" the Secretary stated that he must find that at least 25% of the service workers' activities were expended in support of those departments which produced the import-impacted articles. Based on his investigation, the Secretary concluded that their activities accounted for "significantly less than 25% of direct labor costs" for all products manufactured at the Marion plant.

After careful examination, the court found the record devoid of any data to support the Secretary's conclusion. Furthermore, the court stated that, even if the

supporting data existed, the Secretary's rationale was flawed because he failed to account for the possibility that the service workers' efforts were not evenly distributed throughout the plant. Consequently, the court remanded the action to the Secretary to develop the relevant data, and to consider the effect, if any, of an uneven distribution of the service workers' support activities to *all* production departments at the Marion plant.

In compliance with the court's order, the Secretary conducted a further investigation, and on October 20, 1983, submitted his redetermination. The Secretary also submitted a supplemental administrative record, together with a copy of the Notice of Further Determination, which reaffirmed his initial denial of certification of the Marion plant service workers. 48 Fed. Reg. 48876, 48877 (1983).

This Court is empowered to review a decision by the Secretary which denies certification of eligibility for trade adjustment assistance benefits to assure that the determination is supported by substantial evidence, and is in accordance with law. Trade Act of 1974, § 284(b), 19 U.S.C. § 2395(b) (Supp. V 1981).

After reviewing the original and supplemental administrative records, and the briefs of the parties, the court again remands the action to the Secretary for further proceedings in accordance with this opinion.

For the Secretary to certify a petitioning group of workers as eligible, his investigation must disclose, among other things:

> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof *contributed importantly* to such total or partial separation, or threat thereof, and to such decline in sales or production.

Trade Act of 1974, § 222(3), 19 U.S.C. § 2272(3) (1976).

In *Abbott I*, this Court reviewed the Trade Act of 1974 and found that it was silent as to coverage for service workers under the worker adjustment assistance program. Hence, the court stated that it would defer to the Secretary's interpretation and application of the statute if it had "a rational basis in law," was not "inconsistent with the legislative purpose of the statute," and did not frustrate Congressional intent. *Abbott I* at ——, 570 F.Supp. at 49 (citing *John V. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, 86, 347 F.Supp. 1390, 1396 (1972), *aff'd*, 61 CCPA 52, 496 F.2d 1225 (1974), and *Woodrum v. Donovan*, 5 C.I.T. ——, 564 F.Supp. 826, 829 (1983), *appeal docketed*, No. 84–651 (Fed. Cir. Dec. 1, 1983)).

The Secretary contends that for over five years he has interpreted the "contributed importantly" provision of section 222(3) to require the existence of an "important causal nexus" between increased imports of the impacted article, and the resultant separation of the service workers in question. The Secretary further submits that the nexus is established by a showing that the activities of those workers are substantially integrated with the production of the import-impacted articles, in this case journal crosses and bearing races. By substantial integration, the Secretary means that at least 25% of the service workers' activities are directly related to the group of workers producing the adversely affected articles.

In reaffirming the correctness of his initial determination, the Secretary found that no service department or individual service worker expended at least 25% of a typical work week directly in support of the certified production departments, Departments 225 and 230. Based on a finding of no substantial integration, the Secretary concluded that an important causal nexus did not exist, *i.e.*, increased imports did not "contribute importantly" to the separation of workers in the service departments at the Marion plant.

Plaintiffs maintain that the administrative record establishes an important causal nexus. They point to the report of the

Indiana State Employment Service [1] which indicates that no journal crosses or bearing races could be produced by the certified departments without the support functions of the service workers. *See* 47 Fed.Reg. 16434 (1982). Indeed, the Secretary acknowledged and agreed with that conclusion in reaching his negative determination subsequent to this Court's initial remand in its memorandum and order in *Abbott v. Donovan*, 3 C.I.T. 54, 55 (1982), which preceded the determination in *Abbott I. See* 47 Fed.Reg. 16434 (1982). Thus, plaintiffs argue that the Secretary's determination is not supported by substantial evidence, and that the service workers are entitled to certification.

■ The "important causal nexus" test is a reasonable method by which the Secretary may determine whether service workers fall within the scope of the adjustment assistance benefit provisions of the Trade Act of 1974. The parties do not dispute the appropriateness of the test. Rather, they disagree with its interpretation and application to the service workers in this case. Defendant admits that there exists some nexus between the two certified production departments and the service workers. Hence, the questions presented in this case are (1) the degree of that interrelationship; and (2) whether it is substantial enough to rise to the level of an "important causal nexus." If the Secretary finds an "important causal nexus," he must conclude that increased imports of the impacted articles "contributed importantly" to the service workers' separation from employment within the meaning of the Act.

■ The court must now consider the Secretary's interpretation of the "important causal nexus" test, and its application to the service workers at the Marion plant. In *Abbott I*, this Court discussed the Secretary's use of a 25% standard to measure whether service workers were substantially integrated into the production process, thereby establishing the "important causal

nexus" needed for certification. The court noted that the 25% standard may be appropriate where "the efforts of the service departments are *evenly* distributed throughout the plant." *Abbott I* at —, 570 F.Supp. at 50 (emphasis added). The court also stated that it was possible for the certified departments to be "service intensive," that is, "require a higher percentage of services than do other departments." *Id.* Nevertheless, the court found no supporting data in the original record pertaining to the activities of the service workers in relation to the production departments, whether certified or noncertified. Accordingly, the court remanded the action to the Secretary for a more detailed inquiry, and specifically instructed the Secretary to "account for the possibility that services *are not distributed evenly* throughout the plant." *Id.* (emphasis added).

A review of the supplemental administrative record reveals that:

(1) there are 25 service departments which provide auxiliary and support services to the 33 production departments at the Marion plant;

(2) auxiliary and support services are supplied to the production departments on an "as needed" basis;

(3) the Dana Corporation does not maintain records of the time spent by the service workers in providing support services to the 33 production departments at the Marion plant;

(4) the Dana Corporation provided the Secretary with an *estimate* of the number of hours per work week expended by the Marion plant service departments directly related to the production of journal crosses and bearing races;

(5) the estimate disclosed an uneven distribution of support activities by the service workers to production Departments 225 and 230;

---

**1.** The Indiana State Employment Service is the agency charged with the responsibility of implementing the certification decision and adminis-

tering the benefit program at the state level. *See* Trade Act of 1974, § 239, 19 U.S.C. § 2311 (1976 & Supp. V 1981).

(6) the estimate revealed that some service workers, *e.g.*, millwrights and machine repairman, expended a higher percentage of their time in support of Departments 225 and 230 than did other service workers; and

(7) no data was furnished documenting the extent of the service workers' activities for the remaining 31 production departments.

A study of the record on remand shows that there exists an uneven distribution of support services among the production departments at the Marion plant. Consequently, the court does not pass on the reasonableness of the Secretary's 25% standard or requirement. Rather, the court focuses on whether the Secretary, on remand, accounted for the possibility of "service intensive" production departments, and whether his redetermination is supported by substantial evidence, and is in accordance with law.

The record on remand does not support the Secretary's reaffirmance of the non-existence of an "important causal nexus" between increased imports of journal crosses and bearing races, and the separation of the Marion plant service workers. From the data compiled pursuant to the *Abbott I* remand, it appears that the time expended by the service workers in support of Departments 225 and 230 varied extensively depending upon the type of work performed. For example, the contribution of some of the service departments, such as the power house department, was *de minimis*, whereas the support of others, like the millwright department, was much more substantial. Furthermore, while the Secretary submitted data as to the number of hours spent by each service department in relation to the two certified departments, he did not do the same for the remaining 31 production departments. In view of the foregoing, it is the determination of the court that this action be remanded again since the Secretary has not properly accounted for the possibility that some pro-

duction departments are more "service intensive" than others.

In remanding this action, the court notes that *Abbott I* implicitly requires the Secretary to engage in a comparative analysis to determine which, if any, of the 33 Marion plant production departments are "service intensive." The Secretary ought also to calculate, on the basis of the best information available, the amount of time spent by the service workers in support of *each* production department, certified and non-certified. The Secretary may then compare the data, and identify the "service intensive" production departments.

Under the trade adjustment assistance provisions of the Trade Act of 1974, the Secretary has a duty to investigate each properly filed petition. *Woodrum v. Donovan*, 4 C.I.T. 46, 544 F.Supp. 202, *reh'g denied*, 4 C.I.T. 130 (1982). Furthermore, "because of the *ex parte* nature of the certification process, and the remedial purpose of the * * * program, the Secretary is obliged to conduct his investigation with the utmost regard for the interest of the petitioning workers." *Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir. 1981).

The court is aware of the difficulties encountered by the Secretary in obtaining data from the Dana Corporation pertaining to the interrelationship of the various service and production departments at the Marion plant. In view of the obligation noted in the *Local 167* case, the Secretary ought to afford plaintiffs an opportunity to supply any relevant information or data which will assist him in conducting his analysis, and reaching a determination on certification.

The analysis intended by this Court in *Abbott I* is not present in the record on remand. As noted, the only data available is an estimate of the hours expended by the 25 service departments in relation to the production of journal crosses and bearing races by Departments 225 and 230. Without reliable data and the necessary compar-

ative analysis for *all* production departments, the court is unable to find any support for the Secretary's conclusion that the two certified departments were not "service intensive," and thus, the record, here, as in *Abbott I,* did not establish the "important causal nexus" required for certification.

Accordingly, it is hereby ORDERED that:

1. This action is remanded to the Secretary of Labor for redetermination of the certification of eligibility for trade adjustment assistance benefits of the Marion plant service workers, in accordance with this opinion;

2. Within 20 days of the service of this order, the Secretary shall obtain from the Dana Corporation the necessary information and data on the relationship of the service departments and the remaining 31 production departments at the Marion plant;

3. Within 10 days of the receipt of any information or data from the Dana Corporation on the integration of the service departments. with the production departments, the Secretary shall make that information available to plaintiffs' counsel for comment;

4. Within 10 days of receipt of the information or data referred to in paragraph 3, above, plaintiffs' counsel shall serve the Secretary with written comments on the efficacy and pertinence of the. information or data in question, together with any additional information or data which plaintiffs deem pertinent to the analysis required by this opinion;  and

5. Thereafter, the Secretary shall consider the matter specified in paragraphs 2 and 4, above, and publish in the Federal Register a new determination on the petition for certification of the service workers at the Dana Corporation's Marion, Indiana plant;  and shall certify the record and report to the court the results of the further proceedings no later than August 1, 1984.