PAUL T. BENNETT, PLAINTIFF *v.* U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 93–02–00080

(Dated November 18, 1994)

*Sidney N. Weiss, Esq.,* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Marc E. Montalbine),* of counsel: *Scott Glabman,* Office of the Solicitor, U.S. Department of Labor for defendant.

## OPINION

MUSGRAVE, *Judge:* Plaintiff moves this Court for judgment upon the agency record overturning the determinations of the Department of Labor ("Labor") in this case, and remanding the case to Labor for a new investigation and determination. Plaintiff contends Labor's negative determination of eligibility for certification for trade adjustment assistance benefits and its negative determination for reconsideration are not supported by substantial evidence on the record and is not otherwise in accordance with law under the Trade Act of 1974 as amended ("the Trade Act"). 19 U.S.C. § 2272 (1988). Labor opposes the motion and requests affirmance of its determinations.

On the basis of the papers submitted herein, the arguments of the parties, the relevant case law and an examination of the administrative record, the Court finds that Labor's determination is not based on substantial evidence on the record and is not in accordance with law. This case is remanded to Labor for further findings.

## BACKGROUND[1]

On July 20, 1992, Mr. Bennett and other layed-off workers filed a petition upon behalf of employees of the Garrett Fluid Systems Division of Allied-Signal Aerospace Company in Tempe, Arizona ("Allied-Signal"), requesting certification for trade adjustment assistance benefits pursuant to 19 U.S.C. § 2271. P.R. Document 1–4. According to the petition, the affected workers were machinists who produced "commercial and military aerospace hardware." P.R. Document 2. Petitioners alleged that their jobs had been transferred to Allied-Signal's plant in Singapore. P.R. Document 3. In particular, petitioners claim that the intermediate step of tooling and forging parts which were cast in Tempe, Arizona, was now being performed in Singapore.

In the petition, petitioners listed Mr. Jack Reese, in the Tooling Procurement Department as the person who had knowledge that the jobs had been transferred to Singapore. P.R. Document 2. In addition, one of

---

[1] The Court quotes without attribution the uncontroverted facts in the record. Citations to documents contained in the public record of this administrative review are designated "P.R." Citations to documents contained in the confidential record of this administrative review are designated "C.R."

the petitioners, Mr. Jeffrey Whitehead, provided a letter with additional information which contained a list of people within the company who could verify the petitioners' claim. P.R. Document 3.

In August 1992 an investigation was conducted by Labor. Labor first investigated whether any of Allied-Signal's customers had switched their purchases of aerospace equipment from Allied-Signal's Tempe plant to its Singapore plant. In order to make such a determination, Labor surveyed 11 major customers of Allied-Signal. Each of the customers surveyed responded that they had not increased their purchases of imported aerospace hardware in 1991 as compared to 1990 or in the first half of 1992 as compared to the first half of 1991. P.R. Document 18 and C.R. Document 33–66.

Next, Labor investigated petitioners claim that production work had been shifted from Allied-Signal's Tempe plant to its Singapore plant. Labor requested that Allied-Signal complete a questionnaire concerning its business operations including its sales, production, and employment for the period under investigation. C.R. Document 20–32. In response to the questionnaire, Allied-Signal submitted data reporting sales, production, and employment for both the Tempe and Singapore plants. *Id.* This information exhibited that from 1990 to 1991 and from the first half of 1991 to the first half of 1992, sales and production at both the Tempe and Singapore plants declined. C.R. Document 20–21.[2] In addition, the data showed that while the number of hourly employees at the Tempe plant declined during the same period, the number of hourly employees at the Singapore plant also declined. C.R. Document 32.[3]

On September 19,1992, Labor issued a negative determination regarding Allied-Signal employees' eligibility to apply for worker adjustment assistance. P.R. Document 70–71. Labor determined that an increase in imports had not "contributed importantly" to the workers' separation from Allied-Signal. P.R. Document 71; *see* 19 U.S.C. § 2271(b)(1). Labor stated:

> U.S. imports of parts for military aircraft decreased in the latest twelve-month period May through April 1991–1992 compared with the same period 1990–1991. A survey conducted by the Department

[2] In 1990, the Tempe plant had total sales of [ ]. In 1991, the Tempe plant's sales declined by [ ] to a total of [ ]. C.R. Document 20. In 1990, the Singapore plant had total sales of [ ]. In 1991, the Singapore plant's sales declined by [ ] to a total of [ ]. *Id.* During the first half of 1991, the Tempe plant had total sales of [ ]. During the first half of 1992, the Tempe plant's sales declined by [ ] to a total of [ ]. *Id.* During the first half of 1991, the Singapore plant had total sales of [ ]. During the first half of 1992, the Singapore plant's sales declined by [ ] to a total of [ ]. *Id.*
> With respect to production during the period under investigation, Allied-Signal noted the [ ]. C.R. Document 21. Allied-Signal states that it, therefore, [ ]. *Id.*
[3] In 1990, the Tempe plant had total hourly employment of [ ] employees. In 1991, the Tempe plant's hourly employment declined by [ ] employees to a total of [ ] employees. C.R. Document 32. In 1990, the Singapore plant had total hourly employment of [ ] employees. In 1991, the Singapore plant's hourly employment declined by [ ] employees to a total of [ ] employees. *Id.* During the first half of 1991, the Tempe plant had a total hourly employment of [ ] employees to a total of [ ] employees. *Id.* During the first half of 1991, the Singapore plant had total hourly employment of [ ] employees. During the first half of 1992, the Singapore plant's hourly employment declined by [ ] employees to a total of [ ] employees. *Id.*

of Labor revealed that the subject firm's major customers did not import aerospace hardware during the period relevant to the investigation.

P.R. Document 71.

On November 9, 1992, petitioners requested that Labor reconsider its negative determination. P.R. Document 76–78. The petitioners reiterated their claim that work was transferred from the Tempe plant to the Singapore plant. P.R. Document 77. Nevertheless, the application for reconsideration was denied on December 4, 1992. P.R. Document 89–91. In its negative determination on reconsideration, Labor stated:

> The "contributed importantly" test is generally demonstrated through a survey of the subject firms customers. The Department's survey shows that the subject firm's major customers did not import aerospace hardware during the period relevant to the investigation.

P.R. Document 90.

Labor relied on a letter dated November 30, 1992, in which Mr. William C. Roche, Allied-Signal's Manager for Compensation and Benefits stated:

> I have spoken with our Manager of Purchasing who informs me that no more than $100,000 worth of production has been shifted to the Singapore facility during 1991 and 1992. Additionally, much of this work was being performed by suppliers outside of our Tempe plant and not Allied-Signal employees.
>
> The total amount shifted equates to approximately 0.02% of our total annual sales. Additionally, you'll recall from the answers we provided in the Information Request package (item 2.b) [C.R. 20] that, while sales where declining for the Tempe plant, they were also declining for the Singapore plant (minus 3.8% and minus 5.8%, respectively).

C.R. Document 87.

Furthermore, Labor stated:

> The findings show that the workers were not separately identifiable by product line and that only an negligible amount of production was shifted to Singapore in the 1991–1992 period and much of the transferred production was performed for the company by outside vendors rather than by employees of the Tempe plant. Findings also show that the Singapore plant had declining sales in 1992 compared to 1991.

P.R. Document 90.

## DISCUSSION

In order for Labor to certify a group of workers for adjustment assistance, 19 U.S.C. § 2272 states that:

(a) The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have

become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

(b) For purposes of subsection (a)(3) of this section—

(1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.

19 U.S.C. § 2271 (a)–(b)(1).

A negative determination by Labor denying certification of eligibility for trade adjustment assistance will be upheld if it is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 2395 (1988); *See Woodrum v. Donovan,* 5 CIT 191,193, 564 F. Supp. 826, 828 (1983), *aff'd, sub nom. Woodrum v. United States,* 737 F.2d 1575 (Fed. Cir. 1984). The findings of fact by Labor are conclusive if supported by substantial evidence. 19 U.S.C. § 2395(b). Substantial evidence has been held to be more than a "mere scintilla," and must be reasonable enough to support a conclusion. *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986) (and cases cited therein), *aff'd,* 810 F.2d 1137 (Fed. Cir. 1987). Additionally, "the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union v. Marshall,* 584 F.2d 390, 396 n.26 (D.C. Cir. 1978).

This Court has also observed that "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary [Labor] is obligated to conduct his investigation with the utmost regard for the interests of the petitioning workers." *Stidham v. Dep't of Labor,* 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987), *citing Abbott v. Donovan,* 7 CIT 323, 327–28, 588 F. Supp. 1438, 1442 (1984).

In accordance with this standard of review, this Court cannot in good conscience affirm a determination on the basis of the administrative record in the case at hand. The administrative record developed during the investigation indicates that Labor's investigative efforts were at best lacking.

Plaintiff claims that this case must be remanded back to Labor so that it can properly investigate this petition and properly fulfill its obligation under the statute. This Court is persuaded by plaintiff's argument.

Labor ignores the fact that plaintiff claims that the jobs were lost to imports *by their company* of tooling and forging of parts which were subsequently integrated into larger components which were later *sold by*

*Allied-Signal to its regular customers.* Allied-Signal's customers could not have known that they were purchasing foreign machined (of U.S. cast) parts because the final-assembled product was marked with U.S. country of origin. P.R. Document 76–77. As a consequence, the data gathered by Labor's survey provides little probative value to show that plaintiffs jobs were not lost to imports. This survey could never have disclosed the actual measure of loss of jobs to imports.

Allied-Signal's response to Labor's questionnaire lacked relevant information pertaining to production. The bulk of the data dealt with sales and employment for the Tempe and Singapore plants. However, as stated above in footnote 2, Allied-Signal noted that [ ]. C.R. Document 21. Allied-Signal stated that it, therefore, [ ]. *Id.* In any event, Labor incorporates into the record the relative employment levels at the Tempe and Singapore plants. Labor obviously includes this data in its negative determinations to rebut plaintiffs claim that their jobs were lost to imports, however, Labor has failed to demonstrate a causal connection between decreased employment and decreased production. In other words, Labor does not delineate the importance of this data as it relates to the decision of whether production decreased or whether increased imports caused plaintiff to lose their jobs. Thus, this comparative analysis by Labor does not make clear or provide sufficient guidance to the Court to determine whether manufacturing jobs were not transferred from Tempe to Singapore.

Furthermore, the data representing a decline in imports was based on the decline in U.S. imports for military aircraft parts in the latest twelve-month period, May through April 1991–1992, compared with the same period in 1990–1991. Although this data is not disputed, plaintiff states that the Garrett Fluid Systems Division primarily manufactures air valve systems for commercial jet engines and general aerospace hardware. Labor, however, based its determination on the figures as provided in broad import data for the imports of military aircraft parts. Despite the fact that military imports decreased, imports of civilian aircraft parts increased during the latest twelve-month period May through April 1991–1992 compared with the same period in 1990–1991. P.R. Document 16. Additionally, no data exists in the record pertaining to Allied-Signal's proportionate sales and production for commercial and military aircraft parts. Such information is pivotal in ascertaining the impact of imports on the loss of plaintiff's jobs.

Lastly, Labor in its negative determinations relied on the statements of Mr. William C. Roche, Compensation and Benefits Manager. However, the record reflects that Labor did not request supporting documentation to substantiate Mr. Roche's statements. This Court has held that conclusory assertions alone are not sufficient for Labor to make an accurate determination. *See Former Employees of General Electric Corp. v. U.S. Department of Labor,* 14 CIT 608, 612–13 (1990). Mr. Roche's unsupported assertions that production was not transferred from the

Tempe plant to the Singapore plant cannot be supported on the basis of Mr. Roche's conclusory assertions on this record. In addition, there is no indication in the record that Labor questioned or investigated plaintiff's eye-witness statements and list of witnesses whom plaintiff asserts could verify their claim that the jobs had been transferred to Singapore.

Labor's investigation was cursory at best. While it is true that Labor has considerable discretion in conducting its investigations, and this Court will defer to its choice of reasonable methodologies, Labor must base its determination upon sufficient evidence for a reasonable mind to concur in the result. Here, Labor did not conduct a sufficiently thorough and searching investigation to fully assess plaintiff's claim, especially when viewed in light of the remedial purpose of the statute.

On the facts in the record, neither Labor nor this Court could conclude that foreign imports did not contribute importantly to plaintiff's layoffs. The record lacks any relevant evidence such that a reasonable mind might accept as adequate to support the negative determination in this case. Therefore, this case must be remanded to Labor for further examination.

### CONCLUSION

The Court concludes there is not substantial evidence on the record to support Labor's determination denying eligibility for trade adjustment assistance to plaintiff and that there is good cause to remand this matter to Labor for a new investigation and redetermination in accordance with this opinion. Hence, this action is remanded to Labor, who shall, within sixty days, reevaluate plaintiff's petition in strict accordance with this decision. Remand results shall be filed with the Court immediately upon the completion of the investigation, but in no event later than ninety days of the issuance of this opinion.