Slip Op. 05-16

## UNITED STATES COURT OF INTERNATIONAL TRADE

FORMER EMPLOYEES OF
FEDERATED MERCHANDISING
GROUP, A PART OF FEDERATED
DEPARTMENT STORES,

        Plaintiffs,

        v.

UNITED STATES,

        Defendant.

**Court No. 03-00689**
**Before: Judge Timothy C. Stanceu**

[Plaintiffs' motion for judgment upon the agency record granted; case remanded]

Decided: February 7, 2005

*David Abrams*, Attorney at Law, for plaintiffs.

    *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, Jeanne E. Davidson, Deputy Director, *Steven Mager*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Peter Nessen*, Office of the Solicitor, United States Department of Labor, of Counsel, for defendant.

## OPINION AND ORDER

**STANCEU, Judge:**

    Plaintiffs, former employees of Federated Merchandising Group, a part of Federated Department Stores ("Federated"), appeal from a final decision by the United States Department of Labor ("Labor" or the "Department") denying them eligibility for trade adjustment assistance benefits under Title II of the Trade Act of 1974, as amended 19 U.S.C. § 2272 (West Supp. 2004) (the "Act"). Labor concluded that the employees did not meet the requirements of the Act, basing its conclusion on its findings of fact that plaintiffs' separations from employment at

Federated's operation in New York, New York were attributable neither to increases in imports of like products nor to a shift in production to a foreign country but, instead, were attributable to the employer's substituting a computer design program for the employees' manual labor, which consisted of sewing garment samples and making garment patterns. Before the court is plaintiffs' Motion for Judgment Upon the Agency Record under USCIT Rule 56.1. Because a finding of fact pivotal to the Department's final decision is not supported by substantial evidence in the administrative record, the court determines that Labor's decision denying plaintiffs' eligibility cannot be sustained upon judicial review. Accordingly, the court grants plaintiffs' motion and remands this matter to the Department for further proceedings.

## I. BACKGROUND

The Act authorizes an array of adjustment assistance benefits to workers who have lost their jobs as a result of increased imports or shifts of production out of the United States. These specific "trade adjustment assistance" benefits, provided under Federal and related state programs, include training, re-employment services, and various allowances, such as income support, job search, and relocation allowances.

Plaintiffs were separated from their employment as garment sample sewers and pattern makers for Federated on January 31, 2003. The following May, plaintiffs petitioned the Department to obtain a certification of eligibility for trade adjustment assistance benefits. After a brief investigation, Labor denied the petition. *See Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 68 Fed. Reg. 36,846 (June 19, 2003). The Department gave as its reason for denial that "[t]he investigation revealed that worker separations at the subject firm are not attributable to increases in imports or a shift in production to a foreign country, but rather are attributable to

a change in the company's production technology, which resulted in substitution of the manual labor by [a] computer design program." *Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance* (*"Initial Determination"*), Administrative Record ("A.R.") at 15-16.

Following the denial, plaintiffs requested that Labor reconsider their application for adjustment assistance benefits. In a letter to the Department from one of the former employees, Mr. Pasquale Bilello, plaintiffs explained the basis for their request for reconsideration and provided details on the relevant former operations of Federated:

> The Women's Ready to Wear Pattern Making and Sample Sewing Department of Federated Merchandising Group of New York consisted of eight employees, a Director of Pattern Services, three Pattern Makers, each capable of draping fabric fittings on a fit mannequin to show the respective Brand Director for their comments, a Sample Cutter, who cut the hard paper patterns out of the correct fabric, paying attention to detail and accuracy, four Sample Sewers, who are responsible for sewing all the cut parts together to be sure to maintain Quality and Accuracy of seam widths and garment integrity, so it will reflect the fit and balance that the Pattern Maker required.

Bilello Letter, A.R. at 26. Mr. Bilello challenged in particular the Department's finding of fact that the addition of a computer design program was the reason Federated reduced the number of employees, arguing that plaintiffs had performed sewing and other manual operations that could not be performed by a computer:

> The Pattern Maker must still go through the same steps as was done before, ask for a print out of the corrected pattern, have it cut and sewn together, view it on a mannequin, and have it fit on a live model to be viewed with the Brand Director. The Pattern Maker will make any adjustments needed, have it reentered into the computer and then send it to the proper supplier so that they may start production of the stock garments.

*Id.* According to Mr. Bilello, the manual nature of the work leads to the conclusion that in order for Federated "to produce the same amount of patterns and sewn samples with half the staff that they had before the 'Lay-Off,' they must send the bulk of their patterns and sample making to an outside source." *Id.*

Labor contacted a representative of Federated to make additional inquiries in response to plaintiffs' request for reconsideration. After this additional investigation, Labor determined again that plaintiffs were not eligible for trade adjustment assistance benefits. Labor stated that the additional investigation revealed that "a computer program had reduced the need for manpower, although a minimal number of workers were retained to input data and create samples. The [company] official also stated unequivocally that production performed by the petitioning worker group had not been outsourced domestically or internationally." *Notice of Negative Determination Regarding Application for Reconsideration for Federated Merchandising Group, a Part of Federated Department Stores, New York, NY*, A.R. at 30, 68 Fed. Reg. 56,327 (Sept. 30, 2003) (*"Determination upon Reconsideration"*).

## II. Jurisdiction and Standard of Review

This court is granted exclusive jurisdiction of any civil action commenced to review final determinations of the Secretary of Labor with respect to the eligibility of workers for adjustment assistance under the Trade Act of 1974. *See* 28 U.S.C. § 1581(d)(1) (2004). Upon review, findings of fact by the Secretary of Labor are conclusive if supported by substantial evidence. *See* 19 U.S.C. § 2395(b). Denials of certification for adjustment assistance benefits will be affirmed upon judicial review if the Department's determination is supported by substantial evidence and is otherwise in accordance with law. *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd*, 737 F.2d 1575 (Fed. Cir. 1984). "Substantial evidence has been

held to be more than a 'mere scintilla,' but sufficient enough to reasonably support a conclusion." *Former Employees of Swiss Indus. Abrasives v. United States*, 17 CIT 945, 947, 830 F. Supp. 637, 639-40 (1993) (citing *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987)).  This Court has noted that "because of the *ex parte* nature of the certification process, and the remedial purpose of the [trade adjustment assistance] program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers." *Abbott v. Donovan*, 7 CIT 323, 327-28, 588 F. Supp. 1438, 1442 (1984) (internal quotations and citation omitted).  In evaluating the evidence underlying the Secretary's conclusions, the court may consider only the administrative record before it.  *See* 28 U.S.C. § 2640(c); *Int'l Union v. Reich*, 22 CIT 712, 716, 20 F. Supp. 2d 1288, 1292 (1998).

### III. DISCUSSION

Plaintiffs claim two errors in the Department's denial of certification.  First, they contend that the record evidence is not consistent with the ultimate findings.  Second, plaintiffs allege that they were denied due process because they were unable "to be confronted with the employer's statements and to present evidence in rebuttal." *Pls.' Mot. for J.* at 2.

Section 222 of the Act requires the Secretary of Labor to certify a group of workers as eligible to apply for adjustment assistance benefits if a significant number or proportion of the workers in the workers' firm or subdivision of the firm have become separated from employment, and if one of two further sets of conditions are met.  First, under subsection (a)(2)(A) of section 222, such workers may qualify if sales or production of the employing firm or subdivision have decreased absolutely, if imports of articles like or directly competitive with articles produced by the firm or subdivision have increased, and if the increase in imports

contributed importantly to plaintiffs' separation and to the decline in the sales or production of the firm or subdivision. 19 U.S.C. § 2272(a)(2)(A).[1] Second, under subsection (a)(2)(B), the workers may qualify if there has been a shift in production by the firm or subdivision of articles like or directly competitive with articles produced by the firm or subdivision to a foreign country, and if any of the following conditions are met: (1) the shift in production was to a country with which the United States has a free trade agreement, (2) the shift in production was to a country that is a beneficiary under one of various trade preference programs, or (3) there has

---

[1] The specific requirements of section 222 of the Act, as codified at 19 U.S.C. § 2272 (West Supp. 2004), are as follows:

**(a)** In general

A group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) shall be certified by the Secretary as eligible to apply for adjustment assistance under this part pursuant to a petition filed under section 2271 of this title if the Secretary determines that–

**(1)** a significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and

**(2)(A)(i)** the sales or production, or both, of such firm or subdivision have decreased absolutely;

**(ii)** imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and

**(iii)** the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or

**(B)(i)** there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

**(ii) (I)** the country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;

**(II)** the country to which the workers' firm has shifted production of articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or

**(III)** there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision.

been or is likely to be an increase in imports of articles like or directly competitive with articles produced by the firm or subdivision. 19 U.S.C. § 2272(a)(2)(B).

The Department's *Initial Determination* and the Federal Register notice announcing it both stated that plaintiffs had been denied eligibility because the Department's investigation revealed that neither the "increased imports" requirement under subsection (a)(2)(A), nor the "shift in production to a foreign country" requirement under subsection (a)(2)(B), had been met. *Initial Determination*, A.R. at 15; 68 Fed. Reg. at 36,846. The *Initial Determination* based both of these conclusions of law on the same findings of fact: "The investigation revealed that worker separations at the subject firm are not attributable to increases in imports or a shift in production to a foreign country, but rather are attributable to a change in the company's production technology, which resulted in substitution of the manual labor by [a] computer design program." *Initial Determination*, A.R. at 15-16. The *Initial Determination* included one other finding of fact but did not explain how that finding affected the Department's conclusions, stating that "[t]he investigation did not reveal the nature of sales and production, because all paper patterns and sample garments produced at the subject facility are used in-house and are not sold to outside customers." *Id.* at 15. Because it referred to "sales and production," this finding of fact appeared to pertain to the criterion in subsection (a)(2)(A)(i) that "the sales or production, or both, of such firm or subdivision have decreased absolutely." 19 U.S.C. § 2272(a)(2)(A)(i).

In its *Determination on Reconsideration*, Labor concluded that there had been "no error or misinterpretation of law or of the facts which would justify reconsideration of the Department of Labor's prior decision." *Determination on Reconsideration*, A.R. at 33; 68 Fed. Reg. at 56,327. The final determination characterized the prior decision as having denied eligibility "because the 'contributed importantly' group eligibility requirement of [19 U.S.C.

§ 2272(a)(2)(A)(iii)], was not met, nor did the subject firm shift production to a foreign source in the relevant period." *Id*.; A.R. at 32, 68 Fed. Reg. at 56,327. In describing the investigation culminating in the Department's *Initial Determination*, the *Determination on Reconsideration* stated as follows: "The investigation revealed that the subject firm did not import products like or directly competitive with paper patterns and sample garments during the relevant time period of 2001 to April of 2003, nor did it transfer production abroad." *Id.* This finding of fact did not appear in the *Initial Determination*.

The *Determination on Reconsideration*, like the *Initial Determination*, appears to base the denial of eligibility primarily on the Department's findings of fact that "worker separations at the subject firm are not attributable to increases in imports or a shift in production to a foreign country, but rather are attributable to a change in the company's production technology, which resulted in substitution of the manual labor by [a] computer design program." *Initial Determination*, A.R. at 15-16.

The court concludes that a finding of fact that the Department identified as pivotal to its decision, *i.e.*, the finding that the worker separations were attributable to the substitution of manual labor by a computer design program, is not supported by substantial evidence in the administrative record. The evidence on the record that is relevant to this finding does not support the finding and instead appears to contradict it. The evidence at issue, placed on the record by the reopened investigation, consists of an exchange of e-mail communications between a Labor official and a representative of Federated. The Labor official's e-mail message to the Federated representative stated as follows:

> Basically, the petitioners are appealing our finding that their layoffs
> were attributed to the fact that their job functions were replaced with a
> computer program, which reduced the need for manual labor.

> Specifically, they say that a computer cannot make the decisions
> required of the pattern makers or physically create a sample garment.
> They allege that their production must have outsourced to another
> (potentially foreign) facility. Can you please comment on the
> petitioners' allegations in terms of whether there is any truth to it?

A.R. at 28. The Federated representative responded in this way:

> There was a need to downsize the area due to work process. Due to a
> decreasing need for pattern samples, the area did not necessitate
> having three pattern making associates (productivity reports show a
> decrease of patterns made over time). At the same [time], as in all
> aspects of our business, we looked at [ ] how we could leverage
> technology, and as such, we incorporated a new computer program for
> this department. We retained one sample maker to produce manual
> samples as needed and another to enter the data into the computer.
> This has not been outsourced either domestically or internationally.

*Id.*

In its *Determination on Reconsideration*, Labor stated that "a computer program had

reduced the need for manpower, although a minimal number of workers were retained to input

data and create samples." A.R. at 30. This finding mischaracterizes the communication of the

Federated representative, quoted above. The Federated official, alluding to a "need to downsize

the area due to work process" and "a decrease of patterns made over time," stated that due to a

"decreasing need for pattern samples," the area in which the plaintiffs worked "did not

necessitate" maintaining the previous number of employees. A.R. at 28. Although the Federated

official also referenced, in the same response, the incorporation into the operation of a new

computer program, the official did not state that the new computer program was the reason or the

principal reason for the separation of the employees. To the contrary, the official's use of the

words "at the same time" to introduce the subject of the new computer program indicates that

any effect of the new computer program on employment was separate and apart from the

"decreasing need for pattern samples." The response, read in the context of all the evidence of

record, fails to support the Department's finding of a causal link between the new computer program and the separation of the employees. Instead, the response points to the decreasing need for "pattern samples" (referred to elsewhere in the proceeding as paper patterns and sample garments) as the cause of the separations.

Because of the discrepancy between Labor's conclusion and the Federated official's explanation for the workers' separation, the court is unable to conclude that Labor's denial of plaintiffs' request for eligibility is based on substantial evidence. *See Former Employees of Sun Apparel of Tx. v. United States Sec'y of Labor*, Slip Op. 04-106 at 17-18 (Ct. Int'l Trade Aug. 20, 2004). That discrepancy, standing alone, requires that the court remand this matter for a reopening of the administrative proceeding. The court notes, moreover, that Labor's mischaracterizing the e-mail exchange truncated the investigation by precluding an inquiry into the reasons underlying the reduced need for "pattern samples." Absent such an inquiry, Labor was not in a position to rule out the possibility that the cause or causes of the reduced need for pattern samples satisfy the criteria of 19 U.S.C. § 2272.

The court further observes that the statement by the Federated official that "[t]his has not been outsourced either domestically or internationally" does not suffice to rule out the possibility of plaintiffs' qualifying for trade adjustment assistance based on shifts in production to a foreign country. The official's unsupported statement, which is susceptible to different meanings, is too vague and indefinite to support a finding that no qualifying shift in production occurred that could have satisfied the criteria of 19 U.S.C. § 2272(a)(2)(B). That statement may have indicated, for example, only that Federated did not specifically contract with a foreign vendor for the garment samples and patterns formerly made by plaintiffs. In that event, the work performed

by plaintiffs nevertheless may have been supplanted by work performed abroad, as part of a larger process of making imported apparel items.

Moreover, it is Labor's responsibility, not the responsibility of the company official, to determine whether a former employee is eligible for benefits. *See Former Employees of Sun Apparel of Tx.*, Slip Op. 04-106 at 17 (citing *Former Employees of Marathon Ashland Pipeline v. Chao*, 370 F.3d 1375, 1385 (Fed. Cir. 2004)). Labor had a duty to investigate the cause or causes of the reduced need for pattern samples, a fact potentially significant to plaintiffs' qualifying for benefits under the Act.

IV. CONCLUSION

The court will remand this matter to the Department for completion of the investigation with regard to plaintiffs' claims. Specifically, Labor must determine why Federated experienced a reduction in the need for garment samples and patterns in the time period leading up to plaintiffs' separation. It must then determine whether, in light of that new information, plaintiffs qualify for eligibility under 19 U.S.C. § 2272.

The court further concludes, based on the decision to remand this matter for further proceedings consistent with this opinion, that it is unnecessary to address plaintiffs' claim that the manner in which Labor conducted the investigation constituted a denial of due process.

V. ORDER

For the foregoing reasons, it is hereby

ORDERED that plaintiffs' motion for judgment on the agency record is granted; and it is further

ORDERED that Labor's Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance for former employees of Federated Merchandising Group is not supported by substantial evidence on the record; and it is further

ORDERED that this matter is remanded for further proceedings consistent with this opinion; and it is further

ORDERED that the Department of Labor will have ninety (90) days to complete the additional investigation required and file the remand results; and it is further

ORDERED that plaintiffs will have twenty (20) days from the date of the filing of the Labor remand results to file a brief with regard to those results; and it is further

ORDERED that defendant will have twenty days (20) from the filing of plaintiffs' brief to file a response.


_____/s/_____
Timothy C. Stanceu
Judge


Dated: February 7, 2005
          New York, New York