**Slip Op. 05-92**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Judge Judith M. Barzilay**

|  |  |  |
|---|---|---|
|  | x |  |
| Former Employees of IBM Corp., Global Services Division, et. al., | : |  |
| Plaintiffs, | : |  |
|  |  | **Court No. 03-00656** |
| v. | : | **Public Version** |
| United States Secretary of Labor | : |  |
| Defendant. | : |  |
|  | x |  |

[Plaintiff's USCIT Rule 56.1 Motion for Judgment on Agency Record Granted in part.]

Decided: August 1, 2005

*Ivey, Smith & Ramirez, Michael G. Smith, (Jean-Claude Andre)* for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, (*Michael D. Panzera*), Trial Attorney, *Michael F. Bahler*, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division; *Stephen Jones*, Office of the Solicitor, U.S. Department of Labor, of counsel, for Defendant.

**OPINION**

BARZILAY, JUDGE:

This case concerns a number of software developers (also referred to as "software programmers"), including the 126 petitioning workers who became separated from their employment when their jobs were outsourced by IBM to Canada and India. These same workers, originally AT&T employees, had previously been transferred from the AT&T payroll to IBM with representations that "IBM is a leader in the outsourcing industry, and we believe our people

will have good career opportunities there." Jeff May, *Shipped Out - The Story of How AT&T Moved 3,500 Workers to a New 'Career' at IBM – Knowing It Wouldn't Last*, THE STAR LEDGER, August 25, 2002, Administrative Record ("A.R.") at 4. The first part of that statement proved more true than the second, unfortunately for the workers involved. When they were laid off by IBM, Plaintiffs filed for Trade Adjustment Assistance ("TAA") benefits with the United States Department of Labor ("Labor"). Labor denied certification, as it has before, on the ground that the workers' firm "does not produce an article as required for certification under Section 222 of the Trade Act of 1974." *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance*, 68 Fed. Reg. 16,833 (April 7, 2003). Because the court finds that Labor's determination was not supported by substantial evidence on the record, this matter is remanded for further investigation.

**I.     Background**

Plaintiffs are former employees of IBM who were separated from their employment with IBM Global Services Division in Piscataway, NJ and Middletown, NJ on (or about) May 9, 2002. On November 13, 2002, Plaintiff James Fusco ("Fusco") filed a petition with Labor for TAA on behalf of the former employees from the Piscataway facility. *See Petition for Trade Adjustment Assistance on Behalf of Workers At IBM Corporation Global Services Division*, A.R. at 2. On December 16, 2002, a group of former employees from IBM's Middletown facility also filed a petition with Labor for trade adjustment assistance. *See Petition for Trade Adjustment Assistance on Behalf of Workers At IBM Corporation Global Services Division*, A.R. at 15. In response to the petition, Labor initiated its investigation. *See Notice of Investigation*, 67 Fed.

Reg. 78,021 (Nov. 29, 2002), A.R. at 7.

During its investigation, Labor obtained all of the factual information it relied on from two sources:  Plaintiff Fusco and Lauren Landy ("Landy"), staff counsel at IBM Global Services. A.R. at 18-26.  In an e-mail correspondence, Fusco stated that "our job functions were varied, but if I had to sum them up . . . we were involved in the analysis, development and testing of computer software and information systems." A.R. at 22.  Fusco also submitted a newspaper article to support his allegation that the jobs went to Canada. *Id.* Labor then contacted Landy by telephone on March 18, 2003.  Landy stated that

[

                                                                                                              ]

*See Findings of the Investigation*, Confidential Administrative Record ("C.A.R.") at 26.  Labor's investigator made no further inquiry concerning the nature of the work done by Plaintiffs' firm.

On March 23, 2003, Labor denied Plaintiffs' certification for trade adjustment assistance on the ground that Plaintiff's firm did not produce "an article" as required under section 222 of the Trade Act of 1974. *Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance*, 68 Fed. Reg. 16,834 (April 7, 2003)( "*Negative Determination*"),  A.R. at 28-29.  On April 29, 2002, Plaintiffs filed a Request for Administrative Reconsideration of the Department's Denial of TAA.  The Request for Reconsideration stated that "the negative decision for the petitioning worker group came as a result of an overly narrow and antiquated interpretation of production as stipulated in the Trade Act[, and] that software is different from services in that one does not need a software 'worker' to operate software." *Request for Admin. Reconsideration of the Dep't's Denial of TAA for Workers of IBM Corporation*, A.R. at 40.

Specifically, Plaintiff Fusco argued that

> We believe that the Trade Act of 1974 was too narrowly interpreted in the initial determination.  At the time the Trade Act of 1974 was written, computer software was not recognized as the commodity it is today.  We also were not required to be physically present for the computer software to be used, as someone who performed a service would be.

*Id.*

Following Plaintiff's request for reconsideration of the negative determination, Labor consulted two additional sources of information:  (1) the Harmonized Tariff Schedule of the United States (HTSUS) and (2) the North American Industry Classification System (NAICS).  First, Labor  contacted a National Import Specialist at U.S. Customs and Border Protection ("CBP")[1] who stated that software that is electronically generated and transferred is not a tangible commodity for customs purposes.  *Memo from Susan Worden*, June 23, 2003, A.R. at 42.  Second, Labor inquired with a nomenclature analyst at the United States International Trade Commission who also stated that software is only a commodity according to the "media" it is encoded on and that the software itself carries no value under HTSUS.  *Memo from Susan Worden*, June 23, 2003, A.R. at 43.  In addition, Labor relied on NAICS, published by the U.S. Department of Commerce, which designates all custom software applications as "Services."  None of these sources addressed the points Fusco raised in his letter requesting reconsideration, and it appears that Labor has not attempted to answer them to this date.  Based on this information, Labor issued its reconsideration determination, affirming the *Negative Determination* denying certification on June 26, 2003.  *IBM Corporation, Global Services*

---

[1] Formerly known as the U.S. Customs Service.

*Division, Picataway, NJ, and IBM Corporation, Global Services Division, Middletown, NJ;*

*Notice of Negative Determination Regarding Application for Reconsideration* ("*Reconsideration*

*Determination*"), 68 Fed. Reg. 41,845 (July 15, 2003), A.R. at 46-50.  Labor explained that

"[s]oftware and associated information technology services are not listed in the HTSUS" and that

"[s]uch products are not the type of employment work products that Customs officials inspect

and that the TAA program was generally designed to address." *Reconsideration Determination*,

A.R. at 48.  Plaintiff Fusco and three others, on behalf of all similarly situated software workers,

now challenge Labor's determination regarding their eligibility for TAA; specifically the finding

that Plaintiffs' firm did not produce "articles" within the meaning of the Trade Act of 1974.

The three other named plaintiffs – Barbara Lisa Pineau, Dick Young, John F. Lake – are

former employees of Computer Horizons in Irving, Texas who were denied TAA certification

following Investigation No. TA-W-50,399.  *See* 68 Fed. Reg. 5654 (Feb. 4, 2003).  Before

joining this action, the Computer Horizon plaintiffs did not file a request for reconsideration with

Labor, and they did not appeal the negative determination to this court within the 60-day time

period following the publication of the negative determination, as required by 28 U.S.C. §

2636(d).

## II.      Jurisdiction and Standard of Review

This Court has exclusive jurisdiction over civil actions arising from "any final

determination by the Secretary of Labor . . . with respect to the eligibility of workers for

adjustment assistance."  28 U.S.C. § 1581(d)(1) (2000).  Labor's factual findings shall be

conclusive where supported by substantial evidence.  19 U.S.C. § 2395(b) (2000).  Where they

are not supported as such, the Court may remand to the Secretary of Labor to take further evidence. *Id.* Furthermore, this Court considers whether Labor's legal determinations are "in accordance with law," as outlined in the Administrative Procedure Act ("APA"). *See Former Employees of Electronic Data Systems, Corp. v. United States Sec'y of Labor*, 28 CIT __, 350 F. Supp. 2d 1282 (2004) (citations omitted). Because Labor's interpretation of the statutory term "article" is akin to a letter ruling by Customs, *see FEO Electronic Data Systems*, 350 F. Supp. 2d at 1287, any determination by Labor regarding this term is reviewed according to its "power to persuade" as outlined by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)).

## III.     Discussion

Before this court can determine the issue of whether Labor correctly determined that plaintiffs do not produce an "article" within the meaning of 19 U.S.C. § 2272(a), it must first consider whether Labor conducted a "reasonable inquiry" into the nature of the Plaintiffs' employment. *See Former Employees of Sun Apparel of Tex. v. United States Sec'y of Labor*, 28 CIT __, Slip Op. 2004-106 at *15 (Aug. 20, 2004) citing *Former Employees of Hawkins Oil & Gas, Inc. v. United States Secretary of Labor*, 17 CIT 126, 130, 814 F. Supp. 1111, 1115 (1993) (holding that where the administrative record lacked any meaningful discussion regarding the investigative measures undertaken by Labor, the investigation was inadequate and therefore, no deference was due to Labor's determinations). Investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed. *FEO Sun Apparel of Tex.* Slip Op. 2004-106, at *15. Furthermore,"[w]hile the definition of the statutory

term 'article' is a question of law, the question whether particular items produced by Plaintiffs would fall into this definition is factual." *FEO Electronic Data Systems v. U.S. Sec'y of Labor*, 350 F. Supp. 2d at 1291. *See also Former Employees of Marathon Ashland Pipeline, LLC v. Chao*, 370 F. 3d 1375, 1381 (Fed. Cir. 2004). Thus, determining whether Plaintiffs' firm is engaged in the production of articles requires sufficiently detailed factual information about the firm's work. *FEO Electronic Data Systems*, 350 F. Supp. 2d at 1291. Because Labor's investigation in this case regarding the functions performed by Plaintiffs at the IBM Global Services Division was merely perfunctory, it did not constitute a reasonable inquiry, and this matter must therefore be remanded to Labor for further investigation.

**A.**

In both its *Negative Determination* and *Reconsideration Determination* denying certification, Labor relied on little more than Fusco's statement that Plaintiffs "were involved in the analysis, development and testing of computer software and information systems," and Landy's statement that the Plaintiffs "[



]" Although Fusco clearly stated that the Plaintiffs' job functions were "varied," Labor considered only Fusco's summary of those varied functions, that Plaintiffs "were involved in the analysis, development and testing of computer software and information systems." In an e-mail to another petitioner, Kathy Stephanik ("Stephanik") the Senior Economist handling this petition asked for information "describ[ing] the work [petitioners] did, especially defining what the product is, if there is one, and the service

rendered, [if] it's a service." *See* E-mail from Kathy Stephanik, Petitioner, to John Patterson, Senior Economist, Dep't of Labor (Feb. 24, 2003), A.R. at 23. Stephanik's reply to this e-mail was unresponsive, but Labor never followed up with the issue of whether the employees produced a product or rendered a service. *See id.* Although Labor sent a letter to IBM with a company questionnaire to be filled out, no such completed questionnaire can be found in the record. Instead, Labor relies on the company information elicited in one telephone conversation with IBM's in-house attorney. Labor made no further inquiry into what exactly the Plaintiffs' job functions were, or whether any of these functions actually led to the creation of an "article" for purposes of the Act.

**B.**

In addition to these statements, Labor cites to information obtained from Plaintiffs – namely, on-line and newspaper articles. *See* Findings of the Investigation (Business Confidential), A.R. at 26. Labor claims that such information confirmed the description of the Plaintiffs' activity at subject facility. *See* Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance, A.R. at 28-29. Upon review of these materials, however, it is evident that none of the sources Labor relied on provides any additional information regarding the nature of the software produced by Plaintiffs. Discussion in the newspaper article is limited to a chronology of how Plaintiffs came to lose their jobs. It does not describe, in any meaningful way, the work performed by Plaintiffs or whether they produced a product or rendered a service. Moreover, Labor's investigator made no further inquiry concerning the nature of the software produced by Plaintiffs. Based on this scant evidence, Labor concluded that "every description

given of the workers' activities put it squarely in the camp of service denials," and that the workers were engaged in the "analysis, development and testing of computer software and information systems." *Negative Determination.* A.R. at 28-29.

In its *Reconsideration Determination*, Labor did not perform any additional inquiry into the nature of the software produced. Instead, Labor deferred to its practice of denying certification to software programmers where the software has not been embodied on a physical medium. Labor simply assumed that the Plaintiffs were engaged in the production of software that was not embodied on a carrier medium, and focused only on the legal question of whether intangible software can be considered an article for purposes of section 222 of the Trade Act of 1974. *IBM Corporation, Global Services Division, Picataway, NJ, and IBM Corporation, Global Services Division, Middletown, NJ; Notice of Negative Determination Regarding Application for Reconsideration* ("*Reconsideration Determination*"), 68 Fed. Reg. 41,845 (July 15, 2003), A.R. at 46-50. Before this court, Labor argues that because the Plaintiffs do not allege that they produced software embodied in a physical medium in their complaint, there is no need for further inquiry. *Def.'s Mot. to Dismiss*, 37. The court disagrees. It is the responsibility of the Department of Labor to carry out a thorough and complete investigation. See *Sun Apparel*, Slip Op. 2004-106, at *6, *Abbott v. Donovan*, 7 CIT 323, 327-28, 588 F.Supp. 1438, 1442 (1984) ("because of the *ex parte* nature of the certification process, and the remedial purpose of the [TAA] program, [Labor] is obliged to conduct [its] investigation with the utmost regard for the interests of the petitioning worker."). In cases like these, particularly where Labor itself knows the sometimes esoteric criteria needed to be met for certification, and the affected workers do

not, it is incumbent upon Labor to take the lead in pursuing the relevant facts. Labor's assumption here is ungrounded and is not supported by evidence in the record, which does not include any information regarding whether the software produced by the Plaintiffs was embodied in a physical medium.

**C.**

Furthermore, Labor's apparent reliance on the legal conclusion of IBM's staff counsel as the factual basis for its negative determination is not in accordance with law. "An unsupported conclusion simply does not suffice as a proper investigation." *Former Employees of Alcatel Telecomms. Cable v. Herman*, 24 CIT 655, 665 (2000). *See also Former Employees of Ericsson, Inc. v. U.S. Sec'y of Labor*, 28 CIT __, 2004 WL 249165 at * 7 (2004) ( investigation in which Human Resources Manager failed to complete Labor's questionnaire deemed incomplete and inadequate). By simply incorporating Landy's statement that "[

]," without any further inquiry, Labor effectively substituted the staff counsel's opinion for its own inquiry into whether the products produced by Plaintiffs constituted "articles" for the purpose of TAA statute. Although Labor itself acknowledged that IBM had been "very dilatory" in responding to Labor's inquiries, it nonetheless failed to verify Landy's statement. *See Negative Determination,* A.R. at 26.

**D.**

According to Labor's own established practice, workers engaged in software development have regularly been certified when the software is embodied in tangible media, such as a CD-ROM. *See Former Employees of Murray Eng'g, Inc. v. Chao,* 28 CIT __, 346 F. Supp. 2d 1279

(2004). *See also, e.g. Ericsson, Inc. Messaging Group, Woodbury, New York, Certification Regarding Eligibility To Apply for Worker Adjustment Assistance*, 68 Fed, Reg. 8,619 (Feb. 24, 2003) (certifying workers engaged in the development and production of software and hardware integrated into multimedia messaging products for the telecommunication industry). In *Ericsson*, Labor found that the "[w]orkers are engaged in the production of software [which is delivered on a CD] and hardware." *See also Brooks-PRI Automation, Hillsboro, Oregon; Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance,* 67 Fed. Reg. 57,455 (Sept. 10, 2002) (certifying workers engaged in the design, development and production of CMTS (class material tracking system) software, which was in the form of a CD sent to customers operating integrated circuit fabrication plants); *Schneider Automation Inc., North Andover, Massachusetts; Certification Regarding Eligibility To Apply for Worker Adjustment Assistance*, 67 Fed. Reg. 59,551 (Sept. 23, 2002) (certifying workers who produced programmable logic controllers, software, and network/communication products). Thus, although this court makes no determination regarding the legal sufficiency of Labor's distinction between workers producing software embodied on a physical medium and those producing and delivering software in cyberspace, whether the software is embodied in a physical format is highly relevant to Labor's determination given its past practice, and it is essential that Labor determine the exact nature of the work functions performed by the Plaintiffs in this case.

**E.**

In the event that Labor finds that the Plaintiffs in this case produced software that was

embodied on a physical medium, and that the Plaintiffs' work was sufficiently closely connected

to this end product, it is difficult to imagine how the end result in this case would differ from that

in *Ericsson, Inc.*, *Brooks-PRI Automation*, or *Schneider Automation Inc*. If, however, Labor

were to determine that the software produced by Plaintiffs was never embodied on a physical

medium, or that the Plaintiffs were not sufficiently related to a physical product that may have

been produced, a more thorough discussion on remand of Labor's legal determination is still in

order. Labor explained that "[s]oftware and associated information technology services are not

listed in the HTSUS" and that "[s]uch products are not the type of employment work products

that Customs officials inspect and that the TAA program was generally designed to address."

*Reconsideration Determination*, A.R. at 48. It is clear, however, that the HTSUS does mention

and provide for electronically transmitted computer software. *See* General Note 3(I), HTSUS

(exempting "telecommunications transmissions" from "goods subject to the provisions of the

[HTSUS]"). Software transmitted electronically is merely exempted from duty. Labor also stated

during oral argument that it is simply following the lead of the ITC in interpreting the statutory

term "article," in that the ITC distinguishes between software transmitted via physical media and

software transmitted electronically. As Plaintiffs point out, however, the ITC has determined

that software, regardless of its form, is an article under 19 U.S.C. § 1337. *See In re Certain*

*Hardware Logic Emulation Systems and Components Thereof*, Inv. No. 337-TA-383,

Commission Opinion on Remedy, the Public Interest, and Bonding (USTIC, March 30, 1998),

1998 WL 307240. Depending upon the outcome of Labor's factual findings, Labor's remand

results should take these legal issues into consideration and further the discussion that has taken

place thus far.

**IV.     Conclusion**

Accordingly, the court remands this matter to Labor with instructions to supplement this shockingly thin record by further investigating the nature of the software produced by the Plaintiffs, especially whether the software produced by Plaintiffs was embodied in any kind of physical medium, and to explain the differences between the activities performed by Plaintiffs in this case and the activities performed by other petitioners involved in developing computer software who received TAA benefits in the past.  Labor is also directed to explain and clearly support its position with respect to the characterization of the computer programs at issue as articles or services, particularly in light of Plaintiffs' arguments regarding the HTSUS treatment of electronically transmitted software and the ITC's finding that electronically transmitted software is an "article" for purposes of the Trade Act.


August 1, 2005                                              /s/ Judith M. Barzilay
_____          _____
New York, NY                                               Judith M. Barzilay, Judge