**Slip Op. 09-60**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

FORMER EMPLOYEES OF INVISTA, S.A.R.L.,     :

                  *Plaintiffs*,     :

         v.           :        Court No. 07-00160

U.S. SECRETARY OF LABOR,     :

                  *Defendant*.     :

_____

[Remanding action to U.S. Department of Labor for second redetermination on remand.]

Dated:  June 18, 2009

Ruskin Moscou Faltischek, P.C. (Thomas A. Telesca), for Plaintiffs.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Carrie A. Dunsmore); Stephen R. Jones, Office of the Solicitor, U.S. Department of Labor, Of Counsel; for Defendant.

## OPINION

RIDGWAY, Judge:

In this action, former employees of the Chattanooga, Tennessee plant operated by Invista, S.a.r.l. ("the Workers") contest the determinations of the U.S. Department of Labor denying their petition for certification of eligibility for trade adjustment assistance ("TAA") and alternative trade adjustment assistance ("ATAA").  The determinations at issue include the Labor Department's original denial of the Workers' petition, as well as the agency's denial of the Workers' request for reconsideration, and the agency's negative determination on remand.  *See* 72 Fed. Reg. 7907, 7909 (Feb. 21, 2007) (notice of denial of petition); 72 Fed. Reg. 15,169 (March 30, 2007) (notice of denial

of request for reconsideration); 73 Fed. Reg. 32,739 (June 10, 2008) (notice of negative determination on remand).

Now pending before the Court is the Workers' Renewal of their Motion for Judgment Upon the Agency Record. *See generally* Plaintiffs' Memorandum in Support of Motion for Judgment Upon Agency Record ("Pls.' Brief"); Plaintiffs' Memorandum in Support of Renewal of the Motion for Judgment Upon Agency Record ("Pls.' Renewal Brief"); Plaintiffs' Memorandum in Further Support of Renewal of the Motion for Judgment Upon Agency Record ("Pls.' Reply Brief"). The Government opposes the Workers' motion, maintaining that the Labor Department's denial is supported by substantial record evidence and is otherwise in accordance with law. *See generally* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Def.'s Brief").

Jurisdiction lies under 28 U.S.C. § 1581(d)(1) (2000).[1] For the reasons set forth below, this matter must be remanded to the Labor Department once again, for further consideration.

## I. **Background**

The trade adjustment assistance laws are generally designed to assist workers who have lost their jobs as a result of increased import competition from – or shifts of production to – other countries, by helping those workers "learn the new skills necessary to find productive employment in a changing American economy." Former Employees of Chevron Prods. Co. v. U.S. Sec'y of Labor, 26 CIT 1272, 1273, 245 F. Supp. 2d 1312, 1317 (2002) (*quoting* S. Rep. No. 100-71, at 11

---

[1]Except as otherwise noted, all statutory citations herein are to the 2000 edition of the United States Code. Similarly, all citations to regulations are to the 2006 edition of the Code of Federal Regulations.

(1987)); *see generally* <u>Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor</u>, 30 CIT 1315, 1316-20, 454 F. Supp. 2d 1306, 1307-11 (2006) (detailing history and policy underpinnings of trade adjustment assistance programs).

TAA programs entitle eligible workers to receive benefits that may include employment services (such as career counseling, resume-writing and interview skills workshops, and job referral programs), vocational training, job search and relocation allowances, income support payments, and a health insurance coverage tax credit. *See generally* 19 U.S.C. § 2272 *et seq.* (2000 & Supp. II 2002). In addition, older workers may be eligible for a wage insurance benefit, known as alternative trade adjustment assistance ("ATAA").[2]

The trade adjustment assistance laws are remedial legislation and, as such, are to be construed broadly to effectuate their intended purpose. <u>UAW v. Marshall</u>, 584 F.2d 390, 396 (D.C. Cir. 1978) (noting "general remedial purpose" of TAA statute, and that "remedial statutes are to be liberally construed"); *see also* <u>Fortin v. Marshall</u>, 608 F.2d 525, 526, 529 (1st Cir. 1979) (same); <u>Usery v. Whitin Machine Works, Inc.</u>, 554 F.2d 498, 500, 502 (1st Cir. 1977) (emphasizing "remedial" purpose of TAA statute); <u>BMC</u>, 30 CIT at 1320-21 n.9, 454 F. Supp. 2d at 1311 n.9 (collecting additional cases).

---

[2]ATAA allows workers aged 50 or older, for whom retraining may not be appropriate, to accept reemployment at a lower wage and receive a wage subsidy. Workers who qualify for ATAA are eligible to receive 50% of the difference between their new and old wages, up to a maximum of $10,000 over two years. *See generally* GAO Report 04-1012, "Trade Adjustment Assistance: Reforms Have Accelerated Training Enrollment, But Implementation Challenges Remain" (Sept. 2004) at 2, 10.

Moreover, "[b]ecause of the *ex parte* nature of the certification process, and the remedial purpose of the [TAA] program," the Labor Department is obligated to "conduct [its] investigation[s] with the utmost regard for the interest[s] of the petitioning workers." Local 167, Int'l Molders and Allied Workers' Union, AFL-CIO v. Marshall, 643 F.2d 26, 31 (D.C. Cir. 1981); *see also* BMC, 30 CIT at 1321, 454 F. Supp. 2d at 1312 (collecting additional cases). Thus, while the Labor Department is vested with considerable discretion in the conduct of its investigations of trade adjustment assistance claims, "there exists a threshold requirement of reasonable inquiry." Former Employees of Hawkins Oil & Gas, Inc. v. U.S. Sec'y of Labor, 17 CIT 126, 130, 814 F. Supp. 1111, 1115 (1993); *see also* BMC, 30 CIT at 1321, 454 F. Supp. 2d at 1312 (and authorities cited there). Courts have not hesitated to set aside agency determinations which are the product of perfunctory investigations. *See* BMC, 30 CIT at 1321 n.10, 454 F. Supp. 2d at 1312 n.10 (cataloguing numerous opinions criticizing Labor Department's handling of TAA cases).

## II.  The Facts of This Case

Until their termination on January 31, 2007, the Workers in this case were employed as part of the Nylon Apparel Filament Fibers Group at the Chattanooga, Tennessee plant operated by Invista, S.a.r.l. At the time of their termination, the Workers processed orders for nylon apparel filament fiber ("apparel fiber") in support of apparel fiber production at a related plant in Monterrey, Mexico. *See* A.R. 2; 73 Fed. Reg. at 32,739; *see also* Pls.' Brief at 4; Def.'s Brief at 6-7.[3] The

---

[3]The administrative record in this action consists of two parts – the initial Administrative Record (which the Labor Department filed after this action was commenced), and the Supplemental Administrative Record (which was filed after the Labor Department's negative determination on remand).

apparel fiber had been manufactured at the Chattanooga plant, until domestic production ceased and all such production was shifted to the Monterrey, Mexico site in 2004. *See* A.R. 5-6, 45-46; 73 Fed. Reg. at 32,739-40. Since that shift, only nylon performance filament fiber ("performance fiber") has been produced at the Chattanooga plant. *See* C.S.A.R. 8.

The 2004 shift in production to Mexico led to widespread layoffs of production workers and support personnel at the Chattanooga plant. *See* C.S.A.R. 7-8. Invista management filed a petition for TAA and ATAA benefits on behalf of the terminated workers, which the Labor Department granted. Specifically, the Labor Department certified as eligible for TAA and ATAA all Invista workers "engaged in *employment related to the production of*," *inter alia*, apparel fiber "who became totally or partially separated from employment on or after June 7, 2003, through two years from the date of certification [*i.e.*, two years from August 20, 2004]." *See* 69 Fed. Reg. 54,320, 54,321 (Sept. 8, 2004) (original certification) (emphasis added); A.R. 5-6 (TAA/ATAA certification of Invista, S.a.r.l., dated Aug. 20, 2004); S.A.R. 35-36 (confirming that 2004 TAA/ATAA certification expired on August 20, 2006).

As indicated by the language of the certification itself (quoted above), the Invista employees covered by the 2004 TAA/ATAA certification included not only those engaged in the actual production of apparel fiber, but also more than one hundred service workers who had supported that production in various capacities. *See* A.R. 1-2; 30-32, 45; C.S.A.R. 7-8; 73 Fed. Reg. at 32,739-40.

_____

The two parts of the administrative record are separately paginated. Both parts include confidential business information. Citations to the public record are noted as "A.R. ____" and "S.A.R. ____," as appropriate, while citations to the confidential record are noted as "C.A.R. ____" and "C.S.A.R. ____."

The Workers at issue here survived the 2004 lay-offs, and continued their work at the Chattanooga site in support of apparel fiber production, even after that production shifted to Mexico. *See* A.R. 1-2; 30-32, 45; 73 Fed. Reg. at 32,739-40. However, on November 14, 2006 – a mere three months after the 2004 TAA/ATAA certification expired – the Workers were notified that they would be terminated effective January 31, 2007. *See* A.R. 35, 45-46.

In mid-December 2006, Invista's Plant Manager filed the pending TAA/ATAA petition on behalf of the Workers, who include a Product Coordinator as well as three Customer Service Representatives. *See* A.R. 1-3, 36-37; *see also* 69 Fed. Reg. at 54,321; 73 Fed. Reg. at 32,739 (noting that TAA/ATAA petition was filed December 15, 2006). In the TAA/ATAA petition, the Plant Manager attested that the Workers' terminations were "a continuation of the shift in production to Mexico as described in [the 2004 TAA/ATAA certification] that expired August 20, 2006." *See* A.R. 2; *see also* 73 Fed. Reg. at 32,739. The Plant Manager further explained that – notwithstanding the 2004 shift in production to Mexico – "all orders [for apparel fiber had] continued to be processed from the United States" up to that time, but that such work was now going to be transferred to "CSR's [*i.e.*, Customer Service Representatives] located in South America." *See* A.R. 2. The TAA/ATAA petition also noted that two of the subject Workers were age 50 or older, that their skills "are not easily transferable," and that "[c]ompetitive conditions within the industry are adverse." *Id.*

The Labor Department denied the Workers' TAA/ATAA petition. *See* 72 Fed. Reg. at 7909 (denying TAA/ATAA petition on grounds that "[t]he workers' firm does not produce an article as required for certification"); A.R. 30-32. The Labor Department stated that, to be eligible for TAA benefits, workers seeking certification "must work for a 'firm' or appropriate subdivision that

produces an article domestically and there must be a relationship between the workers' work and the article produced by the workers' firm or appropriate subdivision." *See* A.R. 30-31 (*citing* 19 U.S.C. § 2273). The Labor Department found that the Workers "were engaged in marketing activities," that "domestic production of an article within . . . [Invista's] Nylon Apparel Filament Fibers Group [had] ceased more than one year [before]," and that the petitioning Workers thus "were not in support of domestic production within the requisite one year period." *See* A.R. 31. The Labor Department therefore concluded that the Workers could not be "considered import impacted or affected by a shift in production of an article." *Id*. Because the Labor Department determined that the Workers were not eligible for TAA, the Workers' petition for ATAA was similarly denied. *Id*.

One of the petitioning Workers requested that the Labor Department reconsider its determination. *See* A.R. 35-39. The request for reconsideration underscored that the Workers "missed the opportunity of receiving . . . [TAA and ATAA] benefits by less than 3 months," emphasizing that they would have been covered by the 2004 TAA/ATAA certification – and thus "would have been able to have the opportunity of receiving the benefits of . . . TAA [and ATAA]" – if only Invista management had notified them of their impending terminations "in August, versus November of 2006." *See* A.R. 36. Echoing a point made by Invista's Chattanooga Plant Manager in the TAA/ATAA petition, the request for reconsideration stated that the Workers' layoffs were – in essence – the culmination of the 2004 shift in production of apparel fiber to Mexico, the "direct result of the . . . apparel machines going to Mexico, the loss of textile manufacturing in the U.S. the bigger picture." *Id*.; *see also id*. at 38 (explaining that Workers' layoffs were "a direct result of the textile industry going to developing countries and the loss of textile manufacturing in the U.S.").

With no further investigation, the Labor Department denied the Workers' request for reconsideration, stating that the request neither "present[ed] evidence that the Department [had] erred" nor "contain[ed] new facts of a substantive nature bearing on the [agency's initial] determination." *See* A.R. 45-46; 72 Fed. Reg. at 15,169. In denying reconsideration, the Labor Department acknowledged the Workers' claim that their terminations were "a direct result of the same shift in production to Mexico . . . which resulted in workers certification for TAA in 2004." *See* A.R. 45-46; *see also* A.R. 35-38. However, the Labor Department stated that, pursuant to agency regulations, it only "considers production that occurred one year prior to the date of the petition." *See* A.R. 46. The Labor Department therefore concluded that – because the Chattanooga plant ceased production of apparel fiber in 2004 – the Workers' TAA/ATAA petition was "outside of the relevant period." *Id*.

This action ensued. The Workers filed a Motion For Judgment Upon the Agency Record, which argued, *inter alia*, that the Labor Department had denied the Workers' TAA/ATAA petition based on the agency's determination that the Workers "were not in support of domestic production within the requisite one year period," but that the agency had failed to identify the authority for the asserted one-year requirement. *See* Pl.'s Brief at 10; *see also id.* at 4 (asserting that agency "established an arbitrary one-year cut off date"). In addition, although the Workers' motion did not expressly request that the agency extend the 2004 TAA/ATAA certification, the Workers faulted the Labor Department for "fail[ing] to adequately consider the relevancy of the prior certification." *See* Pl.'s Brief at 10.

Conceding that, by its terms, the one-year limitation in 29 C.F.R. § 90.2 appears to apply only in cases where layoffs result from "increased imports," the Government sought – and was

granted – a voluntary remand to permit the Labor Department to determine whether the one-year time bar also applies in "shift of production" cases such as this. *See generally* Defendant's Consent Motion for Voluntary Remand; Order (March 27, 2008). The Government further advised that, if the Labor Department determined that the one-year limitation did not apply, the agency would reconsider the Workers' eligibility for TAA and ATAA. *See* Defendant's Consent Motion for Voluntary Remand.

In its Negative Determination on Remand, the Labor Department abandoned its reliance on the one-year time limitation in 29 C.F.R. § 90.2. Instead, the Labor Department based its negative determination on its conclusion that the Workers' terminations "[were] not related to the shift in production of apparel nylon filament to Mexico in 2004," but, rather, were the result of "a business decision to improve the efficiency of . . . [Invista's] customer service organization." *See* 73 Fed. Reg. at 32,739-40. In light of its conclusion that "the shift of production to a foreign country was not a cause of the workers' separations," the Labor Department reserved judgment as to "the impact of the fact that no production took place at the subject firm during the twelve month period prior to the filing of the petition." *See* 73 Fed. Reg. at 32,739-40. Finally, because the Labor Department determined that the Workers were not eligible for TAA, their petition for ATAA was denied as well. *See* 73 Fed. Reg. at 32,739-40.

## III. Analysis

As explained in section I above, "because of the *ex parte* nature of the certification process, and the remedial purpose of the [TAA/ATAA] program," the Labor Department is obligated to "conduct [its] investigation with the utmost regard for the interests of the petitioning workers." Int'l

Molders and Allied Workers Union, 643 F.2d at 31. Indeed, "the Labor Department is charged with

an *affirmative* obligation to *proactively* and thoroughly investigate all TAA [and ATAA] claims filed

with the agency – and, in the words of its own regulations, to 'marshal all relevant facts' to make

its determinations." BMC, 30 CIT at 1372, 454 F. Supp. 2d at 1357 (*citing* 29 C.F.R. § 90.12). It

is thus no exaggeration to characterize the Labor Department's role in the development of a

TAA/ATAA claim as "pivotal." BMC, 30 CIT at 1372, 454 F. Supp. 2d at 1357.

In stark contrast to the Labor Department officials who are charged with the day-to-day

administration of the complex statutory and regulatory scheme, petitioning workers and their

(typically *pro bono*) counsel cannot reasonably be expected to have knowledge of the frequently-

changing, nuanced, and "sometimes esoteric criteria" for TAA/ATAA certification. Former

Employees of IBM Corp. v. U.S. Sec'y of Labor, 29 CIT 951, 956, 387 F. Supp. 2d 1346, 1351

(2005); *see also id.* (rejecting agency's argument that because workers did not allege certain facts,

agency was not obligated to make further inquiry, and holding that – to the contrary – "it is

incumbent upon Labor to take the lead in pursuing the relevant facts").[4] Accordingly, it would be

absurd and inconsistent with the Labor Department's duty to petitioning workers to require that a

TAA/ATAA claimant "specify with precision the statutory provisions or the corresponding

regulations under which he is seeking benefits." BMC, 30 CIT at 1372 n.91, 454 F. Supp. 2d at

1357 n.91 (*quoting* Akles v. Derwinski, 1 Vet. App. 118, 121 (1991)). Claimants should not be

---

[4]*See generally* BMC, 30 CIT at 1372, 454 F. Supp. 2d at 1357 (noting that "Congress designed TAA as a *remedial* program, recognizing that petitioning workers would be (by definition) traumatized by the loss of their livelihood; that some might not be highly-educated; that virtually all would be *pro se*; that none would have any mastery of the complex statutory and regulatory scheme; and that the agency's process would be largely *ex parte*").

required "to develop expertise in laws and regulations on . . . [TAA/ATAA] before receiving any [benefits]." *Id*. (*quoting* <u>Akles</u>, 1 Vet. App. at 121).

In sum, "Congress did not intend the TAA[/ATAA] petition process to be adversarial. Nor did Congress intend to cast the Labor Department as a 'defender of the fund,' passively sitting in judgment, ruling 'thumbs up' or 'thumbs down' on whatever evidence petitioning workers might manage to present." <u>BMC</u>, 30 CIT at 1372, 454 F. Supp. 2d at 1357. Instead, Congress envisioned that – much like the role of the Veterans Administration in veterans' benefit cases – the Labor Department would take a very active role in developing petitioning workers' TAA/ATAA claims, so as to "render a decision which grants *every benefit that can be supported in law* while protecting the interests of the Government." *See* <u>BMC</u>, 30 CIT at 1372 n.89, 454 F. Supp. 2d at 1357 n.89 (*quoting* VA regulation, 38 C.F.R. § 3.103(a)) (emphasis altered). Thus, in investigating TAA/ATAA claims, the Labor Department cannot limit its review solely to the petitioning workers' express claims. Instead, the agency must independently investigate the facts of each case, and – based on that investigation – consider all legal theories under which the petitioning workers might be eligible for certification. In a case such as this, where there is a relevant prior TAA/ATAA certification, the Labor Department must consider the possibility of amending the prior certification to extend coverage to the new group of petitioning workers. The Labor Department failed to do so here.

Although the statute and regulations do not explicitly address the amendment of TAA/ATAA certifications, the Labor Department extends certifications beyond two years when necessary "to cover all adversely affected workers at the subject firm or appropriate subdivision," in cases where "the later worker separations [were] attributable to the basis for [the original] certification." *See*

United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers v. U.S. Sec'y of Labor, 33 CIT at ____, 2009 WL 1175654 at *4 (2009); Weirton Steel Corporation, Weirton, WV:  Negative Determination on Remand, 73 Fed. Reg. 52,066, 52,068-70 (Sept. 8, 2008)[5]; *see also* 29 C.F.R. § 90.17(f) ("Upon reaching a determination that the certification of eligibility should be continued, the certifying officer shall promptly publish in the Federal Register a summary of the determination with the reasons therefor.").

As outlined in section II above, there is ample record evidence in the case at bar indicating that the terminations of the Workers here were "attributable to the basis for [the original, *i.e.*, the

---

[5]In its Negative Determination on Remand in the Weirton Steel case, the Labor Department explained:

> [I]n implementing its authority to certify all adversely affected workers, the Department has [amended] and continues to amend the expiration date of certifications when the facts of the case show that the later worker separations are attributable to the basis for [the original] certification (the increased imports or shift of production to a foreign country).

73 Fed. Reg. at 52,068.  The agency further stated:

> Requests for an amendment to extend the period of a certification are rare.  However, in response to each request for such an amendment to a certification, the Department reviews the facts of the case and determines whether or not it has been demonstrated that the worker separations that occurred after the expiration date of the certification has expired are also "attributable" to the basis for that certification.

73 Fed. Reg. at 52,069; *see id.* at 52,068 (noting that "requests to amend certification to extend the expiration period are granted in cases where . . . the worker separations are 'attributable' to the basis for the earlier certification").  *See also*, *e.g.*, Thomson, Inc., Circleville, OH: Notice of Termination of Investigation, 72 Fed. Reg. 5751 (Feb. 7, 2007); O/Z Gedney, Terryville, CT: Amended Certification Regarding Eligibility to Apply for Worker Adjustment Assistance, 69 Fed. Reg. 43,454 (July 20, 2004); Wiegand Appliance Division, Emerson Electric Company, Vernon, AL: Amended Certification Regarding Eligibility to Apply for Worker Adjustment Assistance, 68 Fed. Reg. 50,198 (Aug. 20, 2003).

2004] certification" – that is, the 2004 shift of apparel fiber production to Monterrey, Mexico. *See* 73 Fed. Reg. at 52,068. In contrast, there is relatively little record support for the Labor Department's conclusion that the layoffs at issue "[were] not related to the shift in production of apparel nylon filament to Mexico in 2004," but, rather, were the result of "a business decision to improve the efficiency of . . . [Invista's] customer service organization" – and the evidence that exists is relatively weak. *See* 73 Fed. Reg. at 32,739-40.

The Labor Department's principal evidence in support of its determination is the negative response of an Invista representative to a single, pointed inquiry by the agency:

> [P]lease answer the following question with "Yes" or "No" and a detailed explanation: Was the business decision to reorganize the Customer Service Organization the result of the shift of production two years earlier?

*See* C.S.A.R. 17. There are, however, several problems with the Labor Department's reliance on such evidence.

First, the Labor Department, in effect, asked the Invista representative the "ultimate question." In essence, the agency delegated to the Invista representative the power to decide the Workers' TAA/ATAA petition. But "it is Labor's responsibility, not the responsibility of [a] company official, to determine whether a former employee is eligible for benefits." BMC, 30 CIT at 1340, 454 F. Supp. 2d at 1328 (quotation omitted). The Labor Department erred by substituting a company representative's conclusory opinion for its own probing inquiry into all the relevant underlying facts concerning the relationship between the 2004 shift in production to Mexico and the Workers' subsequent terminations. *See generally* BMC, 30 CIT at 1339-41, 454 F. Supp. 2d at 1328-29 (cataloguing wide range of opinions criticizing agency for posing "ultimate question" to employers, and for abdicating agency's responsibility to conduct its own independent factual

investigations and to reach its own independent legal conclusions).[6]

Moreover, there is a false dichotomy embodied in the Labor Department's conclusion that the Workers' terminations "[were] not related to the shift in production of apparel nylon filament to Mexico in 2004," but were instead the result of "a business decision to improve the efficiency of . . . [Invista's] customer service organization." *See* 73 Fed. Reg. at 32,739-40. As a matter of pure logic, the fact that a company states that layoffs are part of a plan to "increase efficiency," "restructure," or "save money" says nothing about whether or not those layoffs are attributable to effects of international trade. As a general principle, companies are obviously *always* striving to operate in an efficient and cost-effective manner. No doubt the 2004 shift in production was the result of a "business decision" designed to "increase efficiency," "restructure," and "save money" in the manufacture of apparel fiber. But the driving force behind that "business decision" was unquestionably foreign competition.

The Labor Department cannot premise its determinations in TAA/ATAA cases on conclusory assertions about companies' "business decisions" or on euphemisms such as "enhanced

---

[6]Other flaws in the Labor Department's investigation include the agency's failure to explain why it credited some sources of information and rejected other information. Further, the Labor Department failed to confront sources with conflicting information provided by others, depriving them of the opportunity to clarify discrepancies, and diminishing the usefulness of the information elicited by the agency.

But perhaps most troubling is the Labor Department's failure to contact the Workers, to apprise them of the proof required to establish their entitlement to TAA/ATAA certification, and to elicit information in support of their case. On remand, the Labor Department's sole contact with the Workers was an April 8, 2008 letter to their counsel requesting certain specific information about the Workers' duties at Invista, and the responsibilities which were transferred abroad. *See* S.A.R. 1. Given the Labor Department's failure to reach out to the Workers on remand, the Government's objection to the Workers' submission of a declaration in support of their motion rings very hollow indeed. *See* Def.'s Brief at 12-13.

competitiveness" and "increased efficiency." For purposes of a TAA/ATAA analysis, the relevant question as to any asserted "business decision" is: *Why*? In this case, why did Invista feel the need to "improve the efficiency" of its customer service organization, and how (if at all) was it related to the 2004 shift in production to Mexico (or otherwise related to the pressures of foreign competition)? *See*, *e.g.*, BMC, 30 CIT at 1338 n.32, 454 F. Supp. 2d at 1326-27 n.32 (criticizing Labor Department for accepting similar statements by employers); Former Employees of Int'l Business Machines v. U.S. Sec'y of Labor, 31 ____, ____ n.72, 483 F. Supp. 2d 1284, 1335 n.72 (2007) (same).

In its Negative Determination on Remand, the Labor Department cited three other findings in an effort to bolster its conclusion that the Workers' terminations were not related to the shift in production of apparel fiber to Mexico in 2004. *See* 73 Fed. Reg. at 32,739-40. But those findings too are questionable.

The Labor Department asserts, for example, that "two of the four separated workers worked on a product line (Performance Materials) whose production was not shifted to Mexico." 73 Fed. Reg. at 32,739. But the evidence on that point, in fact, is in conflict and unclear (and, in any event, obviously says nothing about the terminations of the two other workers). The Labor Department similarly emphasizes that more than two years elapsed between the shift of manufacturing operations to Mexico and the terminations of these Workers. *See* 73 Fed. Reg. at 32,739-40. But that is the very point of the Labor Department's procedure for amending TAA/ATAA certifications to extend the expiration period: The Labor Department has implicitly recognized that, in certain cases, the employment of some trade-impacted workers may extend for a time beyond the presumptive two-year period reflected in the agency's standard TAA/ATAA certification. In the instant case, the

Workers were notified of their impending terminations *less than three months* after the 2004 TAA/ATAA certification expired. As its third and final piece of corroborating evidence, the Labor Department notes that the Customer Service Representatives were replaced not by workers in Mexico, but instead by workers in Brazil and elsewhere. *See* 73 Fed. Reg. at 32,739-40. Again, the Labor Department misses the point. The gravamen of the Workers' case is that, if production had not been shifted to Mexico in 2004 (but rather had continued at the Chattanooga plant), the Workers would still have their jobs supporting that domestic production. Nothing in law or logic requires that the Workers' jobs necessarily have shifted to Mexico. Under the Labor Department's own standards, if there is a "causal nexus" between the 2004 shift in production and the Workers' terminations, they are entitled to certification. *See* 73 Fed. Reg. at 52,068.

## IV. <u>Conclusion</u>

For all the reasons set forth above, this matter must be remanded to the Labor Department for a second time. On remand, the Labor Department shall thoroughly and independently investigate the facts of the case, and – based on that investigation – shall consider all legal theories under which the petitioning Workers might be eligible for certification, including the possible amendment of the 2004 TAA/ATAA certification.

A separate order will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Dated: June 18, 2009
     New York, New York