**Slip Op. 09-113**

## UNITED STATES COURT OF INTERNATIONAL TRADE

---

FORMER EMPLOYEES OF INVISTA, S.A.R.L.,  :

                  *Plaintiffs*,      :

       v.                   :           Court No. 07-00160

U.S. SECRETARY OF LABOR,         :

                  *Defendant*.     :

---

[Sustaining U.S. Department of Labor's second redetermination on remand, certifying workers' eligibility to apply for Trade Adjustment Assistance and Alternative Trade Adjustment Assistance]

Dated:  October 9, 2009

Ruskin Moscou Faltischek, P.C. (Thomas A. Telesca), for Plaintiffs.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Carrie A. Dunsmore); Stephen R. Jones, Office of the Solicitor, U.S. Department of Labor, Of Counsel; for Defendant.

## MEMORANDUM OPINION

RIDGWAY, Judge:

In this action, former employees of the Chattanooga, Tennessee plant operated by Invista, S.a.r.l. ("the Workers") contest the determinations of the U.S. Department of Labor denying their petition for certification of eligibility for trade adjustment assistance ("TAA") and alternative trade adjustment assistance ("ATAA").  The determinations at issue include the Labor Department's original denial of the Workers' petition, as well as the agency's denial of the Workers' request for reconsideration, and the agency's negative determination following a voluntary remand.  *See* 72 Fed.

Reg. 7907, 7909 (Feb. 21, 2007) (notice of denial of petition); 72 Fed. Reg. 15,169 (March 30, 2007)

(notice of denial of request for reconsideration); 73 Fed. Reg. 32,739 (June 10, 2008) (notice of

negative determination on voluntary remand).

Invista I reviewed the Workers' challenge to the Labor Department's negative determination

in the voluntary remand proceeding, and remanded this matter to the agency for a second time. *See*

Former Employees of Invista, S.a.r.l. v. U.S. Sec'y of Labor, 33 CIT ____, 626 F. Supp. 2d 1301

("Invista I"). Now pending before the Court is the Labor Department's Notice of Revised

Determination on Remand, together with the supporting Supplemental Administrative Record. *See*

Notice of Revised Determination on Remand, 74 Fed. Reg. 51,195 (Oct. 5, 2009) ("Second Remand

Determination"); Supplemental Administrative Record ("Second Supplemental Administrative

Record").[1] Reversing its earlier rulings, the Labor Department's latest determination grants the

---

[1]The administrative record in this action consists of three parts – the initial Administrative Record (which the Labor Department filed after this action was commenced), the Supplemental Administrative Record (which was filed after the agency's negative determination on remand), and a second Supplemental Administrative Record (the "Second Supplemental Administrative Record" or "S.S.A.R.") filed with the Second Remand Determination at issue here.

The three parts of the administrative record are separately paginated. According to the Labor Department, all three parts include confidential business information. Only the Second Supplemental Administrative Record is cited herein. References to the public version of that record are noted as "S.S.A.R. ____," while references to the confidential version are noted as "C.S.S.A.R. ____."

Finally, much – if not all – of the information in the administrative record that has been designated "confidential" by the Labor Department in fact is not confidential. The agency's longstanding practice in Trade Adjustment Assistance cases of indiscriminate, broadbrush designation of large portions of the administrative record as "confidential" – including generally *all* information provided by employers – effectively precludes review by parties with an immediate interest in a case (such as the plaintiff workers), as well as review by parties and counsel in other cases that may be similar, and by legislators, scholars, journalists, and other concerned members of the public with an interest in the administration of the Trade Adjustment Assistance program.

Workers' Petition, certifying them as eligible to apply for both TAA and ATAA.  *See* 74 Fed. Reg. at 51,196.

Jurisdiction lies under 28 U.S.C. § 1581(d)(1).[2]  As discussed below, the Labor Department's Second Remand Determination, certifying the Workers as eligible to apply for TAA and ATAA, is sustained.

## I.  Background

This should have been a relatively easy case for the Labor Department.  The agency previously certified former Invista employees who did *the same jobs* at *the same plant* as the Workers at issue here.  It nevertheless took four bites at the apple for the agency to get it right.

---

There is a fundamental public interest in transparency in government, and a powerful presumption in favor of disclosure. Judges' decisions, in particular, must be open to public scrutiny. The public has a right to review a judge's rationale, not merely the outcome, in a case. And litigants in other similar cases have a legitimate need (and a right) to review the facts underlying a judge's decision, and how the judge applied the law to those facts, to discern the relevance and significance of the judge's decision vis-a-vis their own cases. The rule of law depends, in large measure, on similar cases being treated similarly. These and other principles weigh heavily against according confidential treatment to information in litigation, subject only to those specific, narrow exceptions recognized by law. *See generally*, *e.g.*, Union Oil Co. of California v. Leavell, 220 F.3d 562, 567-68 (7th Cir. 2000) (Easterbrook, J.); Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943 (7th Cir. 1999) (Posner, J.); Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n, 710 F.2d 1165, 1176-81 (6th Cir. 1983) (discussing, *inter alia*, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)).

The Labor Department will be required to review and resubmit the entire administrative record, including specific justification (with citations to appropriate legal authority, and supported by the requisite factual showings) for each proposed redaction. In the future, the agency must conduct such a review before filing the administrative record with the court.

[2]Except as otherwise noted, statutory citations herein are to the 2000 edition of the United States Code. Similarly, citations to regulations are to the 2006 edition of the Code of Federal Regulations.

As detailed in Invista I (familiarity with which is presumed), the plaintiff Workers in this case are former employees of the Nylon Apparel Filament Fibers Group at Invista's Chattanooga, Tennessee plant. At the time of their termination on January 31, 2007, they processed orders for apparel fiber in support of apparel fiber production at an Invista plant in Mexico. Apparel fiber had previously been manufactured at the Chattanooga plant, until domestic production ceased and all such production was shifted to the Mexico facility in 2004. *See generally* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1305.

The 2004 shift in production to Mexico led to widespread layoffs of production workers and support personnel at the Chattanooga plant. Invista management filed a petition for TAA and ATAA benefits on behalf of the terminated workers, which the Labor Department granted. Specifically, the Labor Department's 2004 certification certified as eligible for TAA and ATAA all Invista workers "engaged in *employment related to the production of*," *inter alia*, apparel fiber "who became totally or partially separated from employment on or after June 7, 2003, through two years from the date of certification [*i.e.*, two years from August 20, 2004]." *See generally* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1305-06 (*quoting* 69 Fed. Reg. 54,320, 54,321 (Sept. 8, 2004); additional citations omitted) (emphasis added). The Workers at issue here survived the 2004 lay-offs, and continued their work at the Chattanooga site in support of apparel fiber production, even after that production shifted to Mexico. However, on November 14, 2006 – a mere three months after the 2004 TAA/ATAA certification expired – the Workers were notified that they were being terminated effective January 31, 2007. *See generally id.*, 33 CIT at ____, 626 F. Supp. 2d at 1306.

In mid-December 2006, Invista's Plant Manager filed the TAA/ATAA petition at issue here, on behalf of the Workers. In the TAA/ATAA Petition, the Plant Manager attested that the Workers' terminations were "a continuation of the shift in production to Mexico as described in [the 2004 TAA/ATAA certification] that expired August 20, 2006." *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1306 (*quoting* TAA/ATAA Petition). The Plant Manager further explained that – notwithstanding the 2004 shift in production to Mexico – "all orders [for apparel fiber had] continued to be processed from the United States" up to that time, but that such work was now going to be transferred to "CSR's [*i.e.*, Customer Service Representatives] located in South America." *See id.*, 33 CIT at ____, 626 F. Supp. 2d at 1306 (citation omitted). The TAA/ATAA Petition also noted that two of the subject Workers were age 50 or older, that their skills "are not easily transferable," and that "[c]ompetitive conditions within the industry are adverse." *See id.*, 33 CIT at ____, 626 F. Supp. 2d at 1306 (citation omitted).

The Labor Department denied the Workers' TAA/ATAA Petition. *See generally* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1306 (*citing* 72 Fed. Reg. at 7909 (denying TAA/ATAA Petition on grounds that "[t]he workers' firm does not produce an article as required for certification")). The Labor Department found that "domestic production of an article within . . . [Invista's] Nylon Apparel Filament Fibers Group [had] ceased more than one year [before]," and that the petitioning Workers thus "were not in support of domestic production within the requisite one year period." *Id.*, 33 CIT at ____, 626 F. Supp. 2d at 1306 (citation omitted). The Labor Department therefore concluded that the Workers could not be "considered import impacted or affected by a shift in production of an article"; and, because the agency determined that the Workers were not eligible for TAA, the Workers' petition for ATAA was also denied. *Id.*, 33 CIT at ____, 626 F. Supp. 2d at

1306  (citation omitted).

The Workers requested that the Labor Department reconsider its determination, underscoring that they had "missed the opportunity of receiving . . . [TAA and ATAA] benefits by less than 3 months," and emphasizing that they would have been covered by the 2004 TAA/ATAA certification – and thus "would have been able to have the opportunity of receiving the benefits of . . . TAA [and ATAA]" – if only Invista management had notified them of their impending terminations "in August, versus November of 2006." *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1306-07 (*quoting* Request for Reconsideration).  Echoing a point made by Invista's Chattanooga Plant Manager in the TAA/ATAA Petition, the Request for Reconsideration stated that the Workers' layoffs in effect were the culmination of the 2004 shift in production of apparel fiber to Mexico – the "direct result of the . . . apparel machines going to Mexico, the loss of textile manufacturing in the U.S. the bigger picture." *Id*., 33 CIT at ____, 626 F. Supp. 2d at 1307 (citations omitted).

With no further investigation, the Labor Department denied the Workers' Request for Reconsideration. *See* 72 Fed. Reg. at 15,169.  The Labor Department acknowledged the Workers' claim that their terminations were "a direct result of the same shift in production to Mexico . . . which resulted in workers certification for TAA in 2004." *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1307 (citations omitted).  However, the Labor Department stated that, pursuant to agency regulations, it only "considers production that occurred one year prior to the date of the petition." *See id*., 33 CIT at ____, 626 F. Supp. 2d at 1307 (citation omitted).  The Labor Department therefore concluded that – because the Chattanooga plant ceased production of apparel fiber in 2004 – the Workers' TAA/ATAA Petition was "outside of the relevant period." *See id*., 33 CIT at ____, 626 F. Supp. 2d at 1307 (citation omitted).

This action followed. The Workers filed a Motion For Judgment Upon the Agency Record, arguing, *inter alia*, that the Labor Department had denied the Workers' TAA/ATAA Petition based on the agency's determination that the Workers "were not in support of domestic production within the requisite one year period," but that the agency had failed to identify the authority for the asserted one-year limitation. *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1307 (citations omitted). In addition, the Workers faulted the Labor Department for "fail[ing] to adequately consider the relevancy of the prior [TAA/ATAA] certification." *See id.*, 33 CIT at ____, 626 F. Supp. 2d at 1307 (citation omitted). Conceding that, by its terms, the one-year limitation in 29 C.F.R. § 90.2 appears to apply only in cases where layoffs result from "increased imports," the Government sought – and was granted – a voluntary remand to permit the Labor Department to determine whether the one-year time bar also applies in "shift of production" cases such as this. *See id.*, 33 CIT at ____, 626 F. Supp. 2d at 1307 (citations omitted).

In its Negative Determination on Remand (the determination at issue in Invista I), the Labor Department abandoned its reliance on the one-year time limitation in 29 C.F.R. § 90.2. Instead, the Labor Department based its negative determination on its conclusion that the Workers' terminations "[were] not related to the shift in production of apparel nylon filament to Mexico in 2004," but, rather, were the result of "a business decision to improve the efficiency of . . . [Invista's] customer service organization." *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1307 (*citing* 73 Fed. Reg. at 32,739-40). In light of its conclusion that "the shift of production to a foreign country was not a cause of the workers' separations," the Labor Department reserved judgment as to "the impact of the fact that no production took place at the subject firm during the twelve month period prior to the filing of the petition." *See id.*, 33 CIT at ____, 626 F. Supp. 2d at 1307-08 (citation omitted).

Finally, because the Labor Department determined that the Workers were not eligible for TAA, their petition for ATAA was denied as well. *See id.*, 33 CIT at \_\_\_\_, 626 F. Supp. 2d at 1308 (citation omitted).

The Workers' renewed challenge to the Labor Department's denial of their TAA/ATAA Petition was the subject of Invista I. Invista I addressed in detail the Labor Department's affirmative obligation to investigate TAA/ATAA claims "with the utmost regard for the interests of the petitioning workers." *See generally* Invista I, 33 CIT at \_\_\_\_, \_\_\_\_, 626 F. Supp. 2d at 1304-05, 1308-09 (*citing*, *inter alia*, Local 167, Int'l Molders and Allied Workers Union, AFL-CIO v. Marshall, 643 F.2d 26, 31 (1st Cir. 1981)). As explained there, the Labor Department cannot limit its investigation of a TAA/ATAA petition solely to the petitioning workers' express claims. Instead, the agency must independently investigate the facts of each case, and – based on that investigation – consider all legal theories under which the petitioning workers might be eligible for certification. *See id.*, 33 CIT at \_\_\_\_, 626 F. Supp. 2d at 1309.

In a case such as this, where there is a potentially relevant prior TAA/ATAA certification, the Labor Department must consider the possibility of amending the prior certification to extend coverage to the new group of petitioning workers. *See generally* Invista I, 33 CIT at \_\_\_\_, 626 F. Supp. 2d at 1309. Invista I concluded that the Labor Department had failed to do so here, and remanded the matter to the agency for a second time, with instructions requiring the agency to "thoroughly and independently investigate the facts of the case, and – based on that investigation – . . . [to] consider all legal theories under which the petitioning Workers might be eligible for certification, including the possible amendment of the 2004 TAA/ATAA certification." *See id.*, 33 CIT at \_\_\_\_, 626 F. Supp. 2d at 1311.

## II. **Analysis**

As Invista I explained, although the statute and regulations do not explicitly address the amendment of TAA/ATAA certifications, the Labor Department has acknowledged that it extends certifications beyond two years when necessary "to cover all adversely affected workers at the subject firm or appropriate subdivision," in cases where "the later worker separations [were] attributable to the basis for [the original] certification." *See generally* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1309 (*citing*, *inter alia*, United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers v. U.S. Sec'y of Labor, 33 CIT at ____, 2009 WL 1175654 at *4 (2009); Weirton Steel Corporation, Weirton, WV: Negative Determination on Remand, 73 Fed. Reg. 52,066, 52,068-70 (Sept. 8, 2008)); *see also id*., 33 CIT at ____ n.5, 626 F. Supp. 2d at 1309 n.5 (compiling cases where agency has amended TAA/ATAA certifications to extend period of coverage).

Invista I observed that the administrative record in this case is replete with evidence supporting the Workers' claim that their terminations were "attributable to the basis for [the original, *i.e.*, the 2004] certification" – that is, the 2004 shift of apparel fiber production to Mexico; and, moreover, that the evidence to the contrary is not only scant, but also weak. *See* Invista I, 33 CIT at ____, 626 F. Supp. 2d at 1309-10 (*quoting* Weirton Steel, 73 Fed. Reg. at 52,068). As Invista I noted, the Labor Department's own standards required the Workers' certification if there was a "causal nexus" between the 2004 shift in production and their terminations. *See id*., 33 CIT at ____, 626 F. Supp. 2d at 1311 (*quoting* Weirton Steel, 73 Fed. Reg. at 52,068).

Incredibly, in the second remand proceeding, it took just *a single phone call* between the Labor Department and a senior representative of Invista to confirm what the Workers have been

telling the agency since December 15, 2006 – that is, that their terminations were a direct (albeit delayed) result of the 2004 shift of apparel fiber production to Mexico (which, in turn, was the basis for the Labor Department's 2004 TAA/ATAA certification of the Workers' former Invista colleagues). *See* C.S.S.A.R. 69-71 (documenting Aug. 21, 2009 phone conversation); *see also id*. at 45 (indicating that Aug. 21, 2009 phone call was "lengthy conversation").

A thorough, even-handed initial investigation of the Workers' TAA/ATAA Petition would have rigorously probed the relationship between the Workers' terminations and the 2004 shift in production to Mexico, sparing the parties and the Court untold hours of work, and, more importantly, avoiding the more than two years and seven months of delay in certifying the Workers for the TAA/ATAA benefits to which the Labor Department now concedes they are entitled. *See* TAA/ATAA Petition (Dec. 15, 2006); 19 U.S.C. § 2273(a) (Supp. II 2002) (requiring agency determination on TAA/ATAA petition within 40 days); *see also* Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor, 30 CIT 1315, 1354-57, 454 F. Supp. 2d 1306, 1341-43 (2006) (and authorities cited there) (emphasizing that effectiveness of trade adjustment assistance depends upon its timeliness).

In any event, the Labor Department's Second Remand Determination has now reversed the agency's four prior rulings, and has granted the Workers' Petition, extending the agency's 2004 certification of eligibility to apply for both TAA and ATAA:

> All workers of Invista, S.A.R.L., Nylon Apparel Filament Fibers Group, A Subsidiary of Koch Industries, Inc., Chattanooga, Tennessee, who became totally or partially separated from employment on or after August 21, 2006, through two years from the issuance of this revised determination are eligible to apply for Trade Adjustment Assistance under section 223 of the Trade Act of 1974, and are eligible to apply for alternative trade adjustment assistance under Section 246 of the Trade Act of 1974.

74 Fed. Reg. at 51,196.[3] The Workers have advised that they concur in the agency's determination. *See* Letter to Court from Workers' Counsel (Sept. 29, 2009).

### III. Conclusion

For the reasons set forth above, the Department of Labor's Notice of Revised Determination on Remand (the Second Remand Determination) is hereby sustained.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided: October 9, 2009
      New York, New York

---

[3]The Labor Department does not expressly state that the Second Remand Determination is an amendment extending the 2004 TAA/ATAA certification. *See* 74 Fed. Reg. at 51,195-96. However, the scope of the Second Remand Determination's certification – encompassing those "who became totally or partially separated from employment *on or after August 21*, *2006*, through two years from the issuance of this revised determination" – is telling. *See* 74 Fed Reg. at 51,196 (emphasis added). The 2004 TAA/ATAA certification expired on August 20, 2006. *See* 74 Fed. Reg. at 51,195. Further, certifications typically do not cover workers separated more than one year prior to the date of the TAA petition. *See* 29 C.F.R. § 90.16(e)(1).

As an aside, note that there is a conflict between the Second Remand Determination as it is included in the Second Supplemental Administrative Record and how it is published in the Federal Register. In the Second Supplemental Administrative Record, the Second Remand Determination is dated September 3, 2009. *See* S.S.A.R. 77. In contrast, as published in the Federal Register, the Second Remand Determination is dated September 8, 2009. *See* 74 Fed. Reg. at 51,196. That difference could be significant to any workers laid off in the future who may be otherwise eligible for TAA/ATAA benefits, because the certification, by its terms, expires two years from its date of issuance – whether that is two years from September 3, 2009, or two years from September 8, 2009.